694 So.2d 678 (1997)
John Loveman REESE, Appellant,
v.
STATE of Florida, Appellee.
No. 82119.
Supreme Court of Florida.
March 20, 1997.
Rehearing Denied May 27, 1997.
*680 Nancy A. Daniels, Public Defender and Nada M. Carey, Assistant Public Defender, Second Judicial Circuit, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Barbara J. Yates, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon John Loveman Reese. We have jurisdiction. Art. V,§ 3(b)(1), Fla. Const.
Reese was charged with first-degree murder, sexual battery with great force, burglary with assault, and armed kidnapping for the rape and strangulation of Sharlene Austin on January 28 or 29, 1992. The kidnapping charge was dropped before trial, and Reese was found guilty of all remaining counts. He was sentenced to death following a jury recommendation of eight to four.
The evidence presented at trial reveals that Reese dated Jackie Grier on and off for seven years; the victim had been Grier's best friend for approximately two and a half years. Reese was extremely possessive and disliked Austin because of the amount of time Grier spent with her. Grier and Austin had begun making trips to Georgia where, unknown to Reese, both had met new boyfriends. They returned from the last of these trips on Monday, January 27, 1992. On Wednesday of the same week, Grier was concerned because she could not reach Austin by phone, and she and a neighbor went to Austin's house and entered through the unlocked back door. They found Austin lying face down in the bedroom, covered with a sheet. She had been strangled with an electrical extension cord that was doubled and wrapped around her neck twice with the ends pulled through the loop.
Reese was questioned by police after his palm print was found on Austin's waterbed. He confessed to breaking into her home around noon on Tuesday, January 28. He said he waited for her to return home because he wanted to talk to her about Grier, but when he saw Austin coming home from work around four o'clock he got scared and hid in a closet. Reese said that after Austin went to sleep on the sofa, he came out of the closet but panicked when she started to move. He grabbed her around the neck from behind and dragged her into the bedroom. He raped her, then strangled her with the extension cord. He was arrested after his confession.
Reese was indicted on May 14, 1992, and tried March 22-25, 1993. He testified on his own behalf at the guilt phase, detailing an intensely troubled childhood and his emotional relationship with Grier. He claimed to have killed Austin out of panicked emotion. Grier also testified. She claimed that Reese never liked Austin, and said that she (Grier) had in fact broken up with Reese before Austin was killed. Two detectives testified that Reese responded "yes" when he was asked if he had decided to hurt the victim while waiting for her to come home.
At the penalty phase, the state presented no additional evidence; Reese called several family members, former teachers, and a psychologist. The jury recommended the death penalty by a vote of eight to four. The judge found three aggravators: cold, calculated, and premeditated ("CCP"); heinous, atrocious, or cruel ("HAC"); and committed in the course of a sexual battery and a burglary. He found one nonstatutory mitigator no significant criminal historybut found that the mitigator, along with other proposed nonstatutory mitigation, was of minimal or no value. He accepted the jury's recommendation and imposed the death penalty. Reese *681 raises nine issues on appeal. We affirm the conviction but remand to the trial court for entry of a new sentencing order.
As to the guilt phase, Reese argues 1) error in finding that no Richardson violation[1] occurred when a witness testified that Reese made a statement as to the time of the homicide, and the statement had not been furnished to defense; 2) error in restricting cross examination of Grier as to Reese's confession where the state had already opened the door by mentioning another part of Reese's confession to her on direct; and 3) error in refusing Reese the opportunity to testify on redirect examination about his offer to plead where the state had already opened the door on cross.
As to the penalty phase, he argues 1) error both in instructing on and finding CCP; 2) error in giving an unconstitutional CCP instruction; 3) error in failing to expressly evaluate, find, and weigh unrebutted mitigation; 4) disproportionality of sentence; 5) unreliability of sentence due to improper, misleading and inflammatory closing arguments by the state; and 6) unconstitutionality of the HAC instruction given.

Guilt Phase
Reese first argues that the judge erred in finding that no Richardson violation occurred when a witness testified that Reese made a statement as to the time of the homicide, and the statement had not been furnished to defense. The state attorney in opening statement said, "[Reese] was asked what time did [the victim] go to sleep, and he said, oh, about ten o'clock that night." After the court had heard from four witnesses, the state proffered testimony from Detective Thowart. During the proffer, the defense attorney made the following statement:
Your Honor, my reason for asking for a moment here is during opening statements, [the state attorney] indicated that Mr. Reese had made a statement that I had not been made aware of, and that was that the actual killing of Ms. Austin occurred somewhere around ten o'clock p.m. that day. This written statement certainly doesn't reflect that.
After ascertaining that the relevant portion of the statement had not in fact been provided to defense counsel, the judge immediately held a Richardson hearing.
This item of information was not mentioned in the notes of either of the two detectives present for the statement. It was not brought out on deposition of either of the two detectives. Upon examination of Detective Thowart, Thowart said, "I do not see anything about ten o'clock, but that is the time he told us, Your Honor." He continued:
I don't remember that question, but if he had [asked me about the time], I would have told the truth, and I knew it was ten o'clock.... We asked what time it was, he said around ten. We said how long did you wait, he said he waited about an hour.
Later, the following exchange took place:
[DEFENSE]: Have you told [the State Attorney's Office] about this time frame?
THE WITNESS: Yes, sir.
[DEFENSE]: Been a part of most of your discussions in the State Attorney's Office throughout the case?
THE WITNESS: Since the deposition, yes, sir.
[DEFENSE]: And you considered it a pretty important factor concerning this homicide?
THE WITNESS: The time-frame?
[DEFENSE]: Yes, sir.
THE WITNESS: Yeah, I think it's important, yes, sir.
The Court acknowledged that the time-frame was important to the defense case:
THE COURT: It can't really be cured by [deposition] at this point. It could be cured by either exclusion of that part of the evidence or by a mistrial, one way or the other. I mean he hasit's been very obvious in his cross examination that that time-frame is critical.
[STATE ATTORNEY]: Your Honor, if that was the case, the defense has a burden in discovery. And that is if that was *682 critical to them, they could have asked that.
[DEFENSE ATTORNEY]: Your Honor, I asked him to tell me everything.
After questioning Detective Thowart and asking him to review the notes made during the interview with Reese, and after examining the substance of Thowart's deposition, the judge held that there was no Richardson violation:
[W]hen you're deposed for a lengthy period of time about a conversation that took place for an hour to an hour-and-a-half, no one, certainly the law does not expect anyone to have a specific, verbatim memory of such conversations, and it appears in my reading of that part of the deposition that the officer was mostly concentrating on his partner's notes at the end of the deposition to make sure everything in the notesso I find that there is no Richardson violation here.
It does not appear that there was any intent to hide this information from the defense. Certainly, the defendant's statements should be divulged as specifically as is humanly possible. It certainly doesn't appear to be any intent by the police officers to hide this one small detail of his testimony. And it appears that the fact that it wasn't mentioned in the deposition is a matter of innocence as far as their intent goes.
So I find that there is no Richardson violation. And I will deny the defendant's request to exclude that part of Officer Thowart's testimony.
We agree with the court's result denying exclusion of the testimony, but we disagree with the analysis. See Thompson v. State, 565 So.2d 1311, 1315-17 (Fla.1990) (holding the court's ultimate determination that there was no Richardson violation was proper even though analysis was flawed).
In Richardson we held that where there is a violation of a procedural rule prescribed by this Court, reversal of a conviction is only necessary if the record discloses that noncompliance resulted in prejudice or harm to the defendant. Richardson, 246 So.2d at 774. The trial court does have the discretion to determine if non-compliance would result in prejudice or harm to a defendant, but to do so it must make "an adequate inquiry into all of the surrounding circumstances." Richardson, 246 So.2d at 775.
We adopted language stating that such an inquiry should cover "at least such questions as whether the state's violation was inadvertent or wilful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial." Richardson, 246 So.2d at 775 (quoting Ramirez v. State, 241 So.2d 744, 747 (Fla. 4th DCA 1970)); see also, e.g., Sinclair v. State, 657 So.2d 1138, 1140 (Fla.1995);[2]Thompson, 565 So.2d at 1316. We expanded on this in Thompson, where we stated:
As to prejudice, the inquiry must focus on whether there was procedural rather than substantive prejudice. That inquiry involves two aspects. First, courts must determine whether the violation impaired the defendant's ability to prepare for trial....
"Once it has been ascertained whether the discovery violation hindered the defendant in his preparation for trial, the court must consider the nature of the violation in fixing upon a sanction."
Thompson, 565 So.2d at 1316-17 (citation omitted). Here, the transcript of the hearing reflects that the judge decided that there was a failure to disclose "critical" information contained in the defendant's oral statement. The hearing established that the information was not only in the detectives' minds, but *683 known to the State Attorney's Office as well. Contrary to what the state asserts, Florida Rule of Criminal Procedure 3.220, makes it clear that the state's duty to disclose the substance of the defendant's statement here is an affirmative one and not a defense burden.
Here, the judge ruled that the testimony was admissible because the violation was not willful. Although willfulness is directly related to the second prong of inquirythe fixing of the sanctionthere is more to the analysis. The judge did not address the prejudice to the defendant, which is the paramount concern in a Richardson hearing. See, e.g., Richardson, 246 So.2d at 775; State v. Schopp, 653 So.2d 1016, 1020-21 (Fla.1995) ("In determining whether a Richardson violation is harmless, the appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense.... This analysis recognizes the procedural prejudice inherent in discovery violations.") We examine the extent to which the violation was prejudicial now, and find that the judge correctly concluded it was not necessary to exclude the controverted evidence.
"Procedural prejudice," as used in the context of a Richardson violation, results when there is "a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred." Schopp, 653 So.2d at 1020; see also Thompson, 565 So.2d at 1316 (prejudice inquiry must focus on whether the violation impaired the defendant's ability to prepare for trial). We do not find that the defendant's ability to prepare for trial was compromised.
The record shows that the ten o'clock time frame was clearly mentioned in the state attorney's opening statement. Indeed, during the discussion surrounding the Richardson inquiry, the defense attorney even admitted that he had heard the state attorney's remark and had realized at that time that he was not in possession of any such statement. Yet, there was no objection during opening arguments, or even a request for a conference at the close of opening arguments. Defense instead waited until not one, but four witnesses had been produced and examined to raise any objection. And while we agree that the time frame was important to the defense case, we are not persuaded by the defense attorney's statement, "The problem is, [it's] past deposing because I've done certain things in my cross examination which I would have not done had I been really on notice about this." Defense counsel had ample opportunity to object before such cross examination, and chose not to do so. The Richardson hearing could have been conducted at the very beginning of the trial, and any prejudice the defense asserted could then have been cured by recess and deposition. Here, there was no timely objection. We find no error in allowing the controverted testimony.
Reese argues the court erred in restricting cross examination of Grier as to Reese's confession where the state had already opened the door by mentioning another part of Reese's confession to her on direct. On direct, Grier said she had visited Reese in jail two weeks after his arrest where he admitted he sexually assaulted Austin before he killed her. On cross, however, the court prohibited Reese from asking Grier about conversations which had occurred approximately two weeks earlier in which Grier had supposedly repeatedly asked the same questions. Reese alleges that Grier had refused to talk to him until he admitted the assault to her.
The judge stated, "I agree with you, it might explain it, but that doesn't make it within the scope of what he brought out, though. That's why you have an opportunity to call witnesses to explain what they presented." We agree. This did not, as Reese alleges, violate the rule of completeness. Although that rule is defined at section 90.108, Florida Statutes (1995), to include only written or recorded statements, it is true that we have allowed the policy to apply to testimony as well. See, e.g., Johnson v. State, 608 So.2d 4 (Fla.1992), cert. denied, 508 U.S. 919, 113 S.Ct. 2366, 124 L.Ed.2d 273 (1993); Christopher v. State, 583 So.2d 642 (Fla. 1991). However, the conversations here were not part and parcel of each other and *684 they occurred several weeks apart. Accordingly, the judge acted within his discretion in ruling that the conversations were properly left for Reese to bring out if Reese chose to call Grier as his own witness. He did not exercise this choice. We find no error here.
As his third guilt phase issue, Reese argues it was error to refuse him the opportunity to testify on redirect examination about his offer to plead where the state had already opened the door on cross. On cross, the following exchange took place:
Q. You're scared of being convicted of first-degree murder on this case, aren't you?
A. Yes, sir.
Q. And you are doing your best to get out of it, aren't you?
A. No, sir.
Reese argues that these questions should have allowed his counsel to ask about plea offers which had been discussed with the state. We agree with the court that the general rule says that offers to plead are not admissible. See § 90.410, Fla. Stat. (1995). Further, any potential prejudice to Reese by the questions was minimized when Reese's own counsel asked Reese if he cared whether or not he was convicted of first-degree murder, and he responded, "Yes sir, I care."
We therefore find no reversible error in the guilt phase. We have, in addition, conducted an independent review of the entire record and find that there is sufficient competent evidence to support the jury's verdict.

Penalty Phase
Reese argues that it was error both to instruct on and find the CCP aggravating circumstance. Reese also argues that an unconstitutional CCP instruction was given. We consider these arguments together. The issues were preserved for our review: Reese both filed a proposed alternative instruction and renewed his objection at the proper time. The instruction given was the standard jury instruction we invalidated in Jackson v. State, 648 So.2d 85 (Fla.1994). However, we have held that the aggravator can still stand where the facts of the case establish that the killing was CCP under any definition. See, e.g., Larzelere v. State, 676 So.2d 394 (Fla.1996). The facts of this casewhere Reese waited in the victim's house for hours, then hid for several more before raping and killing herprovide ample evidence of heightened premeditation; evidence of a careful plan or prearranged design; evidence that Reese killed the victim after cool, calm reflection; and no pretense of moral or legal justification. See Jackson, 648 So.2d at 89. Because of this, the erroneous instruction was harmless. We find no error either in instructing on or finding CCP, and we find no reversible error in using the unconstitutional instruction.
Reese next argues that the court erred in failing to expressly evaluate, find, and weigh unrebutted mitigation. We have reviewed the transcript and agree with Reese that there was mitigation offered in the record which was apparently unrebutted. The duty of a court in this situation is clear:
[T]he sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature.... The court next must weigh the aggravating circumstances against the mitigating and, in order to facilitate appellate review, must expressly consider in its written order each established mitigating circumstance. Although the relative weight given each mitigating factor is within the province of the sentencing court, a mitigating factor once found cannot be dismissed as having no weight. To be sustained, the trial court's final decision in the weighing process must be supported by "sufficient competent evidence in the record."
Campbell v. State, 571 So.2d 415, 419-20 (Fla.1990) (footnote and citations omitted). The sentencing order in this case contains inadequate discussion of the mitigation offered. We therefore remand to the trial court for the entry of a new sentencing order expressly discussing and weighing the evidence offered in mitigation according to the terms we outlined in cases like Campbell.
*685 We find no merit to Reese's argument that his sentence is disproportionate because this is a "domestic relationship." This case does not encompass a domestic relationship as we have used the term in the past: Reese and Grier were, arguably, in a domestic relationship, yet Austin was the victim. Even if it were to fall within that class of cases, however, we have made it clear that the death penalty can still be appropriate. See, e.g., Henry v. State, 649 So.2d 1366 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995). We find no error here.
Reese's argument that his sentence is unreliable due to improper prosecutorial comment during closing argument is also without merit. We have reviewed the closing argument, and find that the prosecutor neither implored the jury to place themselves in the victim's shoes nor impermissibly influenced the jury by suggesting Reese could be paroled if the jury recommended life. Reese argues that the prosecutor's use of a story about a "cute little puppy" who "grew into a vicious dog" was prejudicial. However, evidence of Reese's past character was presented to the jury, so it was not inappropriate for the prosecutor to argue that past character was not a determinant of present character. The story did not constitute name calling, and was not prejudicial. The closing argument did not rise to the level of misconduct. There was no error.
Lastly, Reese argues that the HAC instruction given was unconstitutional. We reject this without discussion: even Reese acknowledges in his brief that subsequent to Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), this Court approved the standard HAC instruction in Hall v. State, 614 So.2d 473 (Fla.), cert. denied, 510 U.S. 834, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993). The standard jury instruction was given in this case; this issue is without merit.
Accordingly, we affirm the judgment of conviction. We remand to the trial court, however, for the entry of a new sentencing order expressly weighing all mitigating evidence presented. The sentencing order shall be entered within thirty days of the issuance of this opinion.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion.
WELLS, Justice, concurring in part and dissenting in part.
I concur with the affirmance of the conviction and the remand for a new sentencing order. However, I cannot agree with parts of the opinion in respect to both the conviction and the sentencing.
In the guilt-phase portion of the opinion, my concern is with the part of the opinion critical of the trial court's analysis of what is claimed to be a discovery violation. My reading of the trial court's analysis of what is claimed to be a discovery violation is that the trial court was ruling in accord with this Court's analysis in Street v. State, 636 So.2d 1297, 1302 (Fla.1994):
Street claims that the trial court erred in refusing to conduct a Richardson [v. State, 246 So.2d 771 (Fla.1971),] inquiry when the State offered testimony about which Street had no prior knowledge. During his deposition, Officer Steven Anderson of the Metro-Dade Police Department answered all of the questions asked him about his activities at the crime scene. When asked if he did anything else in the case, he replied, "No." In rebuttal to Street's defense that he was paranoid and feared police officers, the State offered testimony by Officer Anderson regarding an encounter he had with Street at the Broward County jail after his arrest. Anderson testified that he had gone to the jail to pick up some items and that as he walked past Street's holding cell, Street glared and smirked at him. Anderson explained that he had not mentioned this at the deposition because he was not asked if he had done anything after he left the crime scene. It is evident that there was no discovery violation. Therefore, a Richardson inquiry was not necessary. Downing *686 v. State, 536 So.2d 189 (Fla.1988); Matheson v. State, 500 So.2d 1341 (Fla. 1987); Bush v. State, 461 So.2d 936 (Fla. 1984), cert. denied, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); Justus v. State, 438 So.2d 358 (Fla.1983), cert. denied, 465 U.S. 1052, 104 S.Ct. 1332, 79 L.Ed.2d 726 (1984). As we explained in Bush:

When testimonial discrepancies appear, the witness' trial and deposition testimony can be laid side-by-side for the jury to consider. This would serve to discredit the witness and should be favorable to the defense. Therefore, unlike failure to name a witness, changed testimony does not rise to the level of a discovery violation and would not support a motion for a Richardson inquiry.
461 So.2d [at] 938.
(Footnote omitted.) The difference is that in this case, the trial court properly undertook the precaution of holding a Richardson inquiry. However, even when the circumstances alleged are sufficient that the trial judge should hold a Richardson inquiry, the threshold question in the inquiry remains whether there was in fact a discovery violation.
The continuing duty to disclose pursuant to Florida Rule of Criminal Procedure 3.220(j) has to be afforded a reading which takes into account the right to depositions under our criminal procedures. The right to depositions has to have the concomitant obligation that in the deposition the party taking the deposition will seek information which is available at the time of the deposition. Otherwise, the omission of questions about which information was available at the time of deposition can be used as a strategic depository of discovery violations. In view of the witness here being fully deposed, I believe the analysis in Street and by the trial court in this case correctly concluded that there was in fact no discovery violation. Thus, the trial court correctly did not reach the prejudice prong.
I concur that the sentencing order is deficient because the trial court did not acknowledge in the sentencing order Dr. Krop's testimony and his evaluation of that testimony. I believe that to be sustained the trial court's sentencing order must demonstrate that the trial court considered all of the mitigation evidence in accord with what we held in Foster v. State, 679 So.2d 747, 755 (Fla.1996):
The decision as to whether a mitigating circumstance has been established is within the trial court's discretion. Preston v. State, 607 So.2d 404 (Fla.1992), cert. denied, 507 U.S. 999, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993). Moreover, expert testimony alone does not require a finding of extreme mental or emotional disturbance. See Provenzano v. State, 497 So.2d 1177 (Fla.1986), cert denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987). Even uncontroverted opinion testimony can be rejected, especially when it is hard to reconcile with the other evidence presented in the case. See Wuornos v. State, 644 So.2d 1000, 1010 (Fla.1994), cert. denied, [514] U.S. [1069], 115 S.Ct. 1705, 131 L.Ed.2d 566 (1995). As long as the court considered all of the evidence, the trial judge's determination of lack of mitigation will stand absent a palpable abuse of discretion. Provenzano, 497 So.2d at 1184.
However, I do not agree with the majority opinion in respect to the sentencing order in this case because the opinion does not specifically set out what evidence the majority concludes that the trial court fails to consider and weigh. I believe the majority leaves uncertainty as to what the majority believes the trial court must do to cure the deficiency in the sentencing order.
NOTES
[1] A violation of the discovery rules, as discussed in Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] We are concerned that our opinion in Sinclair could be misinterpreted as holding that the fact that there was no willful violation was dispositive in that case. We make it clear that we did not address the prejudice and substantiality prongs in that case only because we found there was no violation of the discovery rules there: "We agree with the trial court that none of the rules of criminal procedure relating to discovery require the State to disclose information which is not within the State's actual or constructive possession. We therefore reject Sinclair's claim and affirm the trial court's decision on this issue." Sinclair v. State, 657 So.2d 1138, 1141 (Fla.1995) (citation omitted). We note that we set out the same framework for analysis in that case as that which we set out in Richardson, and which we follow in the case at bar.