W. SHARP, Judge.
Strong appeals from a final judgment which adjudicated him guilty of possession of cocaine with intent to sell or deliver,[1] and the sentence imposed of 49 months in state prison. He argues on appeal that the conviction should be reversed because the state failed to present sufficient evidence to prove that he intended to sell or deliver the cocaine found in his vehicle. He also argues that at the sentencing hearing the trial judge erred in assessing a $250.00 public defender lien in this case as well as in another ease[2] for which he was sentenced to 33 months, to be served concurrently. We affirm as to the first point, but grant relief as to the second.
After the close of the state’s case, Strong’s attorney moved for a judgment of acquittal, but not on the ground now argued on appeal. His attorney argued at trial that the evidence presented had been insufficient to show that Strong possessed the cocaine, that it was actually cocaine, and that he knew the cocaine was in his vehicle. Further, the defense did not object at trial to Officer John-sons’ testimony, based on his experience and training as a police officer, that the amount of cocaine found in Strong’s vehicle (60 rocks) was not intended for personal consumption, but rather was for sale or distribution.
We think the trial judge correctly denied the motion for judgment of acquittal on the grounds argued. Thereafter, the defense presented its case which consisted of testimony by Strong and by Strong’s wife, Jacqueline. Defense counsel renewed its motion for judgment of acquittal at the conclusion of the trial.
If the issue of the sufficiency of the evidence to prove intent to sell in this case can be considered by us on appeal, it can only be in the context of fundamental error. See Brown v. State, 652 So.2d 877 (Fla. 5th DCA 1995); Archer v. State, 613 So.2d 446 (Fla.1993); Burke v. State, 672 So.2d 829 (Fla. 1st DCA 1995). And, we must review the whole trial record, not just the state’s case, to determine if the evidence presented, *600 and reasonable inferences to be drawn from it, was sufficient to enable a jury to reasonably conclude that Strong intended to sell or distribute the cocaine found in his vehicle.[3]
Strong takes the view that the jury had only the testimony of Officer Johnson that the cocaine in his possession was intended for sale or distribution, based solely on the amount of cocaine involved in this case. That may be insufficient, standing alone. See Gamble v. State, 644 So.2d 1376 (Fla. 5th DCA 1994). But this is not such a ease.
The jury could also consider all of the testimony in the ease. Looking at the evidence and testimony in the light of sustaining the jury verdict,[4] including all reasonable inferences the jury could have drawn from them, we conclude there was sufficient evidence to support the jury’s verdict that Strong intended to sell or distribute the cocaine found in his possession. The following is a summary of testimony in the record, upon which the jury could have reasonably relied to reach that conclusion.
Strong was observed by Officer Flinn, at 5:45 AM, making a telephone call from a public telephone booth in Winter Park, Florida, with his vehicle parked nearby. Strong and his vehicle, a bright red Jeep Cherokee with fancy wheel covers, were well known to Officer Flinn, as well as Officer Johnson. Strong had a felony record, and had a reputation for being involved in drugs. He also displayed assets and a much higher standard of living than could reasonably be explained by his odd-job employment in the lawn-care business. Strong testified that he was often stopped and challenged by the Winter Park police because they suspected he was dealing in drugs.
On this occasion, Officer Flinn ran Strong’s name through the computer (having recognized him and his vehicle on sight) and found there was an arrest warrant outstanding for him for violation of probation. He proceeded to arrest Strong for that reason. Flinn testified Strong was wearing a considerable amount of gold jewelry, including necklaces and bracelets. When he searched Strong incidental to the arrest, he found $1,507 in cash rolled up in his pocket, separate from a wallet. Shortly thereafter, he took Strong to jail.
Officer Johnson, who arrived to back up Officer Flinn, and who was the supervising officer on duty that night, testified he had considerable training and experience in narcotics interdiction. He observed, through an open widow of the Jeep, a blue nylon bag on the passenger side of the car, in plain view. Based on his experience he immediately suspected it contained either cash or contraband. He knew that Strong had a large amount of cash when he was arrested. Johnson called for a K-9 unit to check the car, to establish probable cause to search it.
Jacqueline Strong, the appellant’s wife, arrived shortly before the K-9 unit. She was asked to wait a short time before taking the Jeep. She agreed, and said that there was no problem since her husband had been behaving himself. The K-9 dog did not alert on the car. Officer Johnson asked Jacqueline for permission to search the Jeep. She agreed and the officer read a consent to search form to her. She again agreed and signed the consent to search form.
Officer Johnson looked into the interior of the front seat, and took out the blue nylon bag. In the bag he found two separate bags containing crack cocaine. One had 38 rocks and the other had 22 rocks. He estimated the street value was $40.00 to $50.00 per rock — a total value of $2,000.00 to $2,500.00. When Johnson walked into the jail where Strong was being held, with the blue bag in his hands, Strong was outraged. He said “You M-F, I told him (Officer Flinn) that he could not go in my car.”
Officer Johnson testified that the amount of cocaine he found in the bag was so large it was not consistent with a stash intended for personal use. The inference was clearly that it was intended for sale or distribution. Even Strong agreed when he testified that *601 the amount of cocaine in the blue nylon bag was not something that a “normal person would use for personal enjoyment.”
Strong’s entire defense was based on Jacqueline’s testimony that she was the one who had, due to financial pressure, gone to a drug dealer and obtained the cocaine on a loan basis. She claimed she was the one who cut it up into pieces and packaged it at the dealer’s residence, and she was the one who intended to sell it, unknown to anyone else in her family, including Strong.
She testified she hid the blue bag in the Jeep and told no one about it. That night or early the next morning, her husband left their home and took the vehicle after a fight over family finances. She worked at a motel housekeeping job and had to support three children, and Strong was unemployed. He also left the house with all of “her” savings (almost $2,000 in cash) which was kept in his coat pocket. His plan was to go to a motel in order to avoid arrest because of having violated his probation. She testified Strong knew nothing about the cocaine in the Jeep, because she had hidden it underneath the console. However, Officer Johnson found the bag open, resting on the passenger seat.
Clearly the jury did not believe the explanation that Jacqueline obtained the cocaine, and that she intended to deal in it. She could not identify the source of the cocaine (someone named Willie located somewhere in Winter Park), and she did not know how much cocaine was contained in the nylon bag, or how many rocks she cut up. She estimated at the most 20. She also testified that all of the rocks were placed in one ball. These facts were completely refuted by the state’s evidence. The jury could reasonably have concluded — based on common sense alone— that Jacqueline was trying to sacrifice herself for her husband, and that in fact he was the drug dealer in the family.
We agree with Strong that he was not afforded an opportunity to contest the amount of the liens assessed for the public defender. Daniels v. State, 679 So.2d 354 (Fla. 5th DCA 1996); Allmond v. State, 668 So.2d 1120 (Fla. 5th DCA 1996); Andrews v. State, 660 So.2d 394 (Fla. 5th DCA 1995). We accordingly strike the liens and remand this cause to the trial court for the opportunity to reimpose the liens after compliance with the Florida Rules of Criminal Procedure.
AFFIRMED, in part; Liens STRICKEN; REMANDED.
COBB and HARRIS, JJ., concur.

. §§ 893.13(l)(a); 893.03(2)(a)(4), Fla. Stat. (1993).

. At the same hearing Strong was sentenced in case No 94-1715 for possession of cocaine with intent to sell, after violating his probation in that case.

. See Reese v. State, 694 So.2d 678, 684 (Fla.1997); Parker v. State, 476 So.2d 134 (Fla.1985); Bates v. State, 465 So.2d 490 (Fla.1985).

. Peterka v. State, 640 So.2d 59 (Fla.1994); Buenoano v. State, 478 So.2d 387, 390 (Fla. 1st DCA 1985).