763 So.2d 394 (2000)
STATE of Florida, Petitioner,
v.
Joseph R. SOWERS, Respondent.
No. 1D99-939.
District Court of Appeal of Florida, First District.
May 22, 2000.
*395 Robert A. Butterworth, Attorney General; and Edward C. Hill, Jr., Assistant Attorney General, Tallahassee, for Petitioner.
Nancy A. Daniels, Public Defender; and Carol Ann Turner, Assistant Public Defender, Tallahassee, for Respondent.
BROWNING, J.
The State of Florida seeks an interlocutory appeal challenging a nonfinal pretrial order of the circuit court granting a defense motion in limine. As a result of the order, the State was precluded from introducing as evidence the testimony of one of its key witnesses, Russell Byrd. See Fla. R.Crim. P. 3.220(n) (providing sanctions for discovery rule violation). Treating this appeal as a petition for writ of common-law certiorari pursuant to Florida Rule of Appellate Procedure 9.040(c) and State v. Keel, 557 So.2d 907 (Fla. 1st DCA 1990), we conclude that the State has not met its *396 heavy burden to demonstrate that the lower tribunal departed from the essential requirements of law in granting the motion in limine excluding Byrd's testimony after the court conducted a proper Richardson[1] hearing. Therefore, we deny the petition.
Joseph R. Sowers went to Santa Rosa County police and sheriffs department authorities on January 31, 1998, and disclosed that he had accidentally shot and killed his friend Ruben McCurdy ten days earlier at the trailer where the two men lived in Jay, Florida. After the autopsy indicated that the track of the wound on the victim was inconsistent with Sowers' initial story to the authorities, Sowers told law-enforcement personnel that after having an altercation with the victim, Sowers had fired the shotgun without aiming it, striking the victim in the head and killing him. On February 23, 1998, the State charged Sowers with the second-degree murder of McCurdy with a shotgun and grand theft of a firearm (McCurdy's shotgun).
Initial discovery promptly began after the filing of the State's information, and Assistant State Attorney Butler filed the State's March 1998 response to the request for discovery. Amended discovery responses were filed in June and July 1998. A superseding indictment, filed on July 2, 1998, charged Sowers with the first-degree premeditated murder of McCurdy with a weapon. On July 14, Assistant State Attorney Molchan filed an amended discovery exhibit listing witnesses and copies of reports. On August 19, Assistant State Attorney Rimmer took over the prosecution of the case and filed a notice of the State's intent to seek the death penalty. The defense's October 1998 motion to re-depose State witnesses was granted without an objection because premeditation was now an issue. In November, the case was set for trial in early March 1999. On February 2, 1999, the State filed its fifth and sixth amended discovery exhibits.
In its February 4, 1999, seventh amended discovery exhibit, the State listed, for the first time, Russell Byrd and Richard Kelley as individuals who had heard Sowers state that he had planned the murder in advance. Byrd's address was listed in care of his attorney in Milton, Florida. Kelley's address was shown as the Santa Rosa County Jail. On February 10 and 19, the defense filed additional discovery responses listing more witnesses whom it intended to call. The defense also filed a list of penalty phase witnesses.
On March 2, 1999, the defense filed a motion in limine alleging that the State had obtained documents from Byrd sometime in July 1998; that Byrd had information relating to premeditation and would testify that Sowers had told him of Sowers' plan to kill McCurdy; that the State had disclosed Byrd as a possible witness on February 3, 1999, but had given no address; that subsequently the defense was told that the State was not planning to call Byrd as a witness because he could not be found; that sometime around February 15, prosecutor Rimmer informed defense counsel that Byrd had been located in the Florida prison system and was going to be transported to Sowers' trial; that the defense had not had any opportunity to talk to or depose Byrd and could not adequately prepare for trial in the time remaining if Byrd was allowed to testify; and that the State's failure to list Byrd as a witness, in July 1998, constitutes a discovery violation. The defense sought the exclusion of Byrd's testimony as evidence.
In a second motion in limine, the defense alleged that on February 3, 1999, defense counsel had received amended discovery listing Richard Kelley as a State witness; that on February 23, defense counsel had questioned Kelley at deposition but that Kelley refused to answer questions regarding his knowledge of Sowers; and that Kelley had stated that he would not answer questions outside the *397 presence of his attorney and without a deal from the Office of the State Attorney relating to Kelley's own case. The movant sought to prohibit the State from submitting Kelley's testimony as evidence.
The trial court granted, in part, the motion in limine as to Kelley, on the condition that Kelley's testimony would not be allowed without the opportunity for the defense to depose Kelley and without a further Richardson hearing. The State sought a similar limiting ruling on the motion in limine as to Byrd.
In argument of counsel relating to the Byrd motion in limine, it was established that the attorney who initially had handled the case and who regularly had provided amended discovery, left the Office of the State Attorney, whereupon the case was reassigned to Rimmer. Rimmer indicated that on February 2, 1999, he discovered that neither Byrd nor Kelley had been listed in any of the discovery responses provided by the former prosecutor. About a month before trial, Rimmer filed the amended discovery document listing the two men's names. As the State claimed not to know Byrd's whereabouts at that time, Byrd's address was listed in care of his lawyer in Milton. Rimmer disclosed that the State had known that Byrd was in jail at one point, but that he had gotten out and could not be located. The mystery of Byrd's whereabouts was solved fortuitously when the State got the return of service on the subpoena that had issued for Byrd, whose wife revealed that he was in Lake Butler. This led the State to Byrd in the Florida prison system. The prosecution indicated that Byrd was scheduled to be transported to the local jail for deposition on March 5, 1999. At the motion hearing, the grand jury testimony was ordered but was not yet available. While admitting that the discovery disclosure was late, the State denied deliberately violating or intending to frustrate the rules of procedure.
The defense argued that the State's belated disclosure of Byrd's name and address prejudiced Sowers' ability to prepare an adequate defense because the defense had lost the opportunity to conduct both a contemporaneous investigation and a timely cross-examination during the period when Byrd was providing information about Sowers' alleged remarks. The defense asserted that Byrd had testified at the July 1998 grand jury proceeding, so that the State had his name and statement when the indictment for first-degree murder came back. Defense counsel contended that the discovery violation was serious and damaging because it related to the critical issue of premeditation. The defense asserted also that allowing a Friday deposition before the following Monday's jury selection could not remedy the prejudice.
The prosecutor opined that the defense was not prejudiced by the State's omission, in that the early February 1999 discovery exhibit had apprised Sowers of the essence of Byrd's statement, yet defense counsel failed to act immediately on this information. The State suggested that if, indeed, the belated disclosure of Byrd's name and address constituted a discovery violation, then the appropriate remedy was a continuance. Opposing any ruling excluding the witness, Rimmer asked the court to allow depositions and to permit the grand jury testimony to be transcribed before making a ruling.
In its written order, the trial court included findings based on the allegations in the motion in limine and on the above-noted argument of counsel. It granted the motion as to Byrd, thereby precluding the introduction of his testimony. Included in the order are findings that the State's failure to make a timely disclosure of Byrd's name and address constitutes a willful discovery violation of a substantial fact, resulting in prejudice to the defense. The State argues on appeal that the lower court erred in reaching this conclusion and in imposing the harsh sanction of witness exclusion without considering any of several available less severe remedies.
*398 The challenged order granting a pretrial motion in limine is a nonfinal order. See State v. Polak, 598 So.2d 150 (Fla. 1st DCA 1992); State v. Kleinfeld, 587 So.2d 592 (Fla. 4th DCA 1991). As a threshold matter, given the nature of the evidence adduced at the motion hearing, we find nothing in the law of Florida authorizing the State to seek direct appellate review of the nonfinal pretrial order granting the defense's motion in limine. Article V, section 4(b)(1), of the Florida Constitution, states that the district courts of appeal shall hear appeals from nonfinal orders "to the extent provided by rules adopted by the supreme court." See State v. Pettis, 520 So.2d 250, 252 (Fla. 1988)("The review of nonfinal orders is controlled by court rule."). Although this state constitutional provision invests the supreme court with exclusive authority to determine the class of nonfinal orders that will be subject to appeal to the district courts of appeal, it does not create any constitutional right to appeal a nonfinal order. See R.J.B. v. State, 408 So.2d 1048 (Fla.1982); Padovano, P., Florida Appellate Practice § 4.4 (2nd ed.1997). Thus, for the challenged nonfinal order to be appealed by the State, a court rule must authorize such an appeal. See Blore v. Fierro, 636 So.2d 1329 (Fla.1994).
Although Florida Rule of Appellate Procedure 9.130 deals generally with proceedings to review nonfinal orders, subsection (a)(2) of the Rule provides that in criminal cases, review of nonfinal orders is prescribed by Rule 9.140. Rule 9.140(c)(1)[2] sets forth an exclusive list of the orders that the State may appeal. Subsection (c)(1) should be read in tandem with sections 924.07 & 924.071, Florida Statutes (1997), which designate the State's right to appeal by enumerating the same kinds of orders. In situations like the case at bar, where the nonfinal pretrial order does not involve one of the subjects or class enumerated in Rule 9.140(c)(1), the filing of a petition for certiorari is "an apt remedy." Pettis, 520 So.2d at 253 & n. 2; State v. Gaiter, 616 So.2d 1132 (Fla. 3d DCA 1993). Cf. Fla. R.App. P. 9.030(b)(1)(B)(providing for district court appellate review of nonfinal orders of circuit courts as prescribed by Rule 9.130) & 9.030(b)(2)(A)(providing for district court certiorari jurisdiction to review nonfinal orders of lower tribunals other than as prescribed by Rule 9.130). In Pettis, the supreme court determined that in criminal cases, certiorari is the proper remedy to review nonfinal pretrial orders that negatively impact the State's ability to prosecute, where the State would not have an adequate remedy by appeal in the event the defendant is acquitted. Thus, we treat this appeal as if the State were seeking common-law certiorari relief. See, e.g., State v. Bradford, 658 So.2d 572 (Fla. 5th *399 DCA 1995); State v. Schwartz, 605 So.2d 1000 (Fla. 2d DCA 1992); State v. Filipowich, 528 So.2d 511 (Fla. 3d DCA 1988).
To be entitled to certiorari relief, the State must demonstrate that the trial court's order amounts to a violation of a clearly established principle of law, resulting in a miscarriage of justice. See Pettis, 520 So.2d at 254; Combs v. State, 436 So.2d 93, 96 (Fla.1983). The law in question is set forth in several subsections of Florida Rule of Criminal Procedure 3.220, which set forth the prosecutor's discovery obligation and the continuing duty to disclose, and in the seminal opinion of Richardson, 246 So.2d at 771. As in Richardson, the instant controversy relates to the State's failure to disclose certain key information about one of its witnesses. Adopting language from Ramirez v. State, 241 So.2d 744 (Fla. 4th DCA 1970), the supreme court in Richardson set out some criteria to be considered by the trial court in assessing the failure of a party to comply with applicable discovery requirements:
Without intending to limit the nature or scope of such inquiry, we think it would undoubtedly cover at least such questions as whether the state's violation was inadvertent or willful, whether the violation was trivial or substantial, and most importantly, what effect, if any, did it have upon the ability of the defendant to properly prepare for trial.
Richardson, 246 So.2d at 775, quoting Ramirez, 241 So.2d at 747; Wilcox v. State, 367 So.2d 1020 (Fla.1979). Once the trial court has considered all the appropriate circumstances, it is authorized to enter whatever order it deems just. See Fla. R.Crim. P. 3.220(n); Richardson, 246 So.2d at 775.
Sowers asserts convincingly that the trial court conducted an adequate Richardson inquiry in the course of the hearing on the motion in limine; the State has the burden to demonstrate otherwise. It was alleged that Byrd had been a witness before the grand jury, which resulted in the July 2, 1998, superseding indictment alleging premeditated murder. Seven and one-half months passed before the State finally located Byrd again in the State's own prison system, and prosecutor Rimmer advised defense counsel of the State's intent to have Byrd transported to testify. The record supports the trial court's finding that the belated disclosure of Byrd's name, and even later disclosure of his address, constitutes a discovery violation.
The finding of a discovery violation triggered the Richardson inquiry. Noting that the State had Byrd's name and statement in its possession as early as July 1998, yet failed to disclose this significant information to the defense until February 1999, the trial court was justified in concluding that the State's discovery violation was willful. It can hardly be argued that the alleged statement of a prospective witness that a criminal defendant had admitted planning the murder in advance is anything other than crucial and substantial, where premeditation is an essential element of the charged offense. See Bradford, 658 So.2d at 573-74. In fact, after Byrd testified before the grand jury, the charges were upgraded from second-degree murder to first-degree premeditated murder. Finally, the trial court accepted the defense's position that the discovery violation prejudiced Sowers' ability to investigate more thoroughly the surrounding circumstances at the time Byrd is alleged to have made the damaging statement. The passage of time precluded the timely questioning of Byrd and any persons who might have heard the statements. Under these circumstances, the court concluded that no reasonable alternative remedy to exclusion of the witness' testimony existed.
"A determination whether to impose exclusion depends upon the totality of the circumstances." Miller v. State, 636 So.2d 144, 149 (Fla. 1st DCA 1994). The exclusion of a witness is "an extreme remedy which should be invoked only under the most compelling circumstances." *400 Wilkerson v. State, 461 So.2d 1376, 1379 (Fla. 1st DCA 1985). Under the general standard of review in a direct appeal, a trial court's ruling on whether a discovery violation justifies the exclusion of testimony is discretionary and should not be disturbed absent a clear showing of abuse. See Wilkerson, 461 So.2d at 1379. Competent, substantial evidence in the record supports the ruling excluding Byrd's testimony. Given our treatment of this matter as a request for extraordinary relief by certiorari, however, the State has a heavier burden to show entitlement to relief. We conclude that the State has not shown that the lower tribunal's ruling amounts to a violation of a clearly established principle of law resulting in a miscarriage of justice. See Pettis; Combs.
PETITION DENIED.
BENTON, J., CONCURS; MINER, J., CONCURS AND DISSENTS WITH OPINION.
MINER, J., concurring and dissenting.
While I agree with the majority that this appeal should be treated as a petition for common law certiorari, I believe the record before us demonstrates that the trial court departed from the essential requirements of law in excluding the testimony at issue here. Accordingly, I respectfully dissent from the contrary conclusion reached by my esteemed colleagues and would grant such petition.
In the case at bar, the defendant was originally charged by information filed on February 25, 1998, with murder in the second degree. Thereafter, on July 2, 1998, a superceding indictment charged him with premeditated murder. On February 3, 1999, the state served Sowers with an amended discovery notice which for the first time furnished the names of Russell Byrd and Richard Kelly.[3] The state alleged that Byrd and Kelly "heard defendant say he planned the murder in advance."
On March 2, 1999, the defendant filed a motion in limine arguing that the state's failure to list Russell Byrd earlier was a discovery violation which resulted in his being unable to adequately prepare for trial because he had been unable to talk to or depose Byrd. A similar motion was filed regarding Richard Kelly, who had refused to be deposed.
The day after the aforesaid motions were filed, a hearing was held on them. Of note here is the fact that jury selection in the case was not set to begin until some six days later. At the hearing, the state admitted that because of a change in prosecutors it had inadvertently failed to list Byrd previously and, indeed, was late in informing the defendant of Byrd and his statement. Since the state was unaware of Byrd's whereabouts at the time his name and the substance of his statement was given to the defendant, Byrd's address was given in care of the attorney who apparently represented Byrd at the time he and Sowers were fellow inmates in the county jail. This attorney also disclaimed any knowledge of where Byrd could be located.
The defendant was unable to locate Byrd as was the state until the state ultimately by a fortuitous circumstance discovered that Byrd was then serving time in a Florida prison. Defendant's counsel alleged that the state's failure to list Byrd in July, around the time he testified to the grand jury and the charge was increased to premeditated murder, was a serious discovery violation and further alleged that being allowed to depose Byrd was insufficient because the defendant was prejudiced by the lack of a reasonable time to investigate Byrd.[4]
*401 Sowers also argued that the state had advised his attorney approximately 20 days prior to the scheduled beginning of his trial that the state would not use Byrd as a witness because they could not locate him and then advised differently after it discovered Byrd's whereabouts.
The state argued that exclusion of Byrd's testimony was too severe a sanction for late discovery that resulted from oversight and should only be considered as a last resort. The trial court took the matter under advisement but expressed its concern that Byrd's testimony was "significant" and the state's delay in disclosing Byrd was "perplexing." The following day, the court issued an order granting the defendant's motion in limine with respect to Byrd finding that the state's failure to provide Byrd's name and nature of his statement earlier was a discovery violation, that Byrd's statement was "substantial" in the case on the issue of premeditation, and that the defense argument that defendant was prejudiced by its inability to investigate the circumstances of Byrd's statement "more thoroughly" was precluded by the passage of time was "meritorious." The court concluded as follows:
In summary, the court finds that although there may not have been an intent on the part of the State Attorney to frustrate the discovery rules, the name of the witness and the witness statement was in the possession of the State since approximately July of 1998 and the failure to disclose is a willful discovery violation of a substantial fact resulting in prejudice to the Defendant.
On that basis, the trial court excluded Byrd's testimony.
In State v. Pettis, 520 So.2d 250, 253-54 (Fla.1988), the court held that the state may petition for certiorari review of nonfinal orders, such as the order we review here, but to be afforded relief, the state must demonstrate that the order violates a clearly established principle of law resulting in a miscarriage of justice. The court in State v. Cecil, 533 So.2d 884, 885 (Fla. 3d DCA 1988), stated that Pettis equates the second prong of prejudice to "significant impairment of the state's ability to prosecute." Because I believe the state has met both prongs in this case, I would grant the petition for certiorari and reverse the order on appeal
Here, the state admittedly was late in disclosing Byrd's name and statement.[5] If this is assumed to be a discovery violation, as the trial court found, the inquiry into prejudice in a Richardson[6] hearing is focused on "whether there was procedural rather than substantive prejudice. That inquiry involves two aspects. First, the court must determine whether the violation impaired the defendant's ability to prepare for trial." Thompson v. State, 565 So.2d 1311, 1316-17 (Fla.1990). "Procedural prejudice" "results when there is `a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred.'" Reese v. State, 694 So.2d 678, 683 (Fla.1997) (citing State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995)). If such impairment has occurred then "the court must consider the nature of the violation in fixing upon a sanction." Thompson v. State, supra. See Reese, 694 So.2d at 683 (Fla.1997) ("Although willfulness is directly related to the second prong of inquiry.. the fixing of the sanction.. there is more to the analysis. The judge did not address the *402 prejudice to the defendant, which is the paramount concern.").
In the instant case, the court found that the defendant was procedurally prejudiced because he was unable to investigate Byrd's statement when he made it in July, and the court excluded Byrd's testimony at trial. Austin v. State, 461 So.2d 1380, 1381 (Fla. 1st DCA 1984) instructs us that
[i]n a system in which the search for truth is the principal goal, the severe sanction of witness exclusion for failure to timely comply with the rules of procedure should be a last resort and reserved for extreme or aggravated circumstances, particularly when the excluded testimony relates to critical issues or facts and the testimony is not cumulative.
Before excluding a witness, however, the court is required to determine whether other less severe means could be used to overcome the prejudice. See id. (reversing for new trial where defendant's late disclosure of witnesses resulted in their exclusion because trial court made "no effort... to determine whether reasonable means could have been employed to overcome the prejudice without resorting to the total exclusion of the witnesses").
In Donaldson v. State, 656 So.2d 580, 580-81 (Fla. 1st DCA 1995), wherein a defense witness was excluded for late disclosure, we reversed for a new trial because the trial court made "no effort" to determine whether reasonable means such as recess or continuance were available to overcome or mitigate possible prejudice. The court stated that "[t]he severe sanction of witness exclusion should be a last resort reserved only for the most extreme or compelling circumstances, particularly when the excluded testimony relates to critical issues or facts and the testimony is not cumulative." Id. at 581. While noting that the trial court has discretion to order exclusion of a witness, we stated that "this extreme remedy should be invoked only after the trial court has conducted an adequate inquiry to determine whether any other reasonable alternatives might be used to overcome or mitigate possible prejudice." Id.
Not only is the instant case one in which there are no "extreme or aggravated circumstances," but there is nothing in the record to demonstrate that the trial court considered any less severe sanction than exclusion. In State v. Del Gaudio, 445 So.2d 605, 610 (Fla. 3d DCA), review denied, 453 So.2d 45 (Fla.1984), the court there stated that when the state has an obligation to furnish material in its control and the disclosure is not forthcoming and the defendant suffers prejudice to his ability to prepare for trial, "such prejudice is completely removed when the defendant is provided with the discovery information and material and is afforded an adequate opportunity to make use of the information and material in the preparation of his defense." "If the discovery material and information comes too late to permit the trial to proceed as scheduled, then the prejudice is extinguished when the trial is continued." Id. The court concluded as follows:
Thus, it is manifest that whatever prejudice to a defendant's ability to defend against the charges may be said to arise from a delay in providing him with discovery is cured when he is provided with such discovery, and there is no other impediment to his utilizing it in the preparation of his defense.
Id.
In this case, the defendant was provided with the witness's statement a month before trial and was set to depose him on the Friday before trial. If time was needed for investigation, a continuance would have provided the defendant with this opportunity. Jury selection was still a week off at the time the court heard the defense motion in limine. Moreover, in this case, because the defendant was being afforded the opportunity to depose the witness and was provided a copy of his grand jury testimony, the remainder of defendant's *403 claim of prejudice was no more than the assertion that he had insufficient time to obtain impeachment material, and "[c]ourts have held that exclusion is too severe a remedy where the only prejudice that can be shown due to the non-disclosure of a witness is an inability to obtain evidence for impeachment purposes." Miller v. State, 636 So.2d 144, 149 (Fla. 1st DCA 1994).
I believe that the record does not support the trial court's finding that the discovery violation here was willful. The court's order states that

although there may not have been an intent on the part of the State Attorney to frustrate the discovery rules, the name of the witness and the witness statement was in the possession of the State since approximately July of 1998 and the failure to disclose same is a willful discovery violation of a substantial fact resulting in prejudice to the Defendant.
(Emphasis added). "Willful" means voluntary and intentional, but not necessarily malicious, as opposed to accidentally or negligently. See Black's Law Dictionary (7th ed.1999). Not only is the court's finding of an unintentional willful violation inconsistent, but there is no record support for a finding of willfulness. The court's finding that the violation was willful is based solely on the amount of time it took for the state to discover and correct its omission. Although this may well constitute negligence, it does not constitute a willful violation. Compare State v. Davis, 532 So.2d 1321 (Fla. 2d DCA 1988), in which the trial was twice continued because of the state's delayed and lengthy discovery. The trial court found the state's delay to be a significant, but unintentional violation and found that the defendant had suffered prejudice to his right to a speedy trial. The trial court sanctioned the state by excluding thirteen state witnesses. The appellate court admonished the state for its "wasteful" delay and said such "negligence should not be condoned." Nevertheless, the court reversed the order because the state's inaction was not intentional and any procedural prejudice could have been alleviated by a continuance. In this case, too, any violation was unintentional, yet the trial court apparently did not even consider granting a continuance. Compare also the case of State v. Schwartz, 605 So.2d 1000 (Fla. 2d DCA 1992). There, the state filed amended discovery, which provided the confidential informant's name and post office box, but the prosecutor intentionally did not provide the street address. On the morning of trial, the defendant argued for sanctions for this discovery violation because the address was insufficient. The court agreed and excluded the witness, who was essential for the state because the defense was entrapment. The Second District found that because the less severe sanction of continuance was available and not considered, the order excluding the witness departed from the essential requirements of law. In so finding the court granted the petition for writ of certiorari and quashed the order excluding the witness.
To conclude, my reading of the record demonstrates that the trial court departed from the essential requirements of law by excluding the state's witness without considering any less severe remedy where the violation was admittedly unintentional, claims of prejudice could have been remedied by a continuance, and the defendant's remaining claim of prejudice, once the defendant deposed the witness, was that it had insufficient time to find material for impeachment. See State v. Davis, 532 So.2d 1321 (Fla. 2d DCA 1988).
I would grant the petition.
NOTES
[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[2] Rule 9.140(c)(1) states:

(c) Appeals by the State.
(1) Appeals Permitted. The state may appeal an order
(A) dismissing an indictment or information or any count thereof or dismissing an affidavit charging the commission of a criminal offense, the violation of probation, the violation of community control, or the violation of any supervised correctional release;
(B) suppressing before trial confessions, admissions, or evidence obtained by search and seizure;
(C) granting a new trial;
(D) arresting judgment;
(E) granting a motion for judgment of acquittal after a jury verdict;
(F) discharging a defendant under Florida Rule of Criminal Procedure 3.191;
(G) discharging a prisoner on habeas corpus;
(H) finding a defendant incompetent or insane;
(I) ruling on a question of law if a convicted defendant appeals the judgment of conviction;
(J) imposing an unlawful or illegal sentence or imposing a sentence outside the range permitted by the sentencing guidelines;
(K) imposing a sentence outside the range recommended by the sentencing guidelines;
(L) denying restitution;
(M) as otherwise provided by general law for final orders.
[3] Byrd and Kelly were apparently fellow inmates of Sowers in the county jail after he was arrested for the McCurdy murder.
[4] Appellant complained that because of the delay he did not have "the opportunity from that to make contact with a client specifically about Mr. Byrd; and we didn't have the chance to get Mr. Byrd's statement immediately and subject it to some type of cross examination." Moreover, appellant maintained that if he had known about Byrd and his statement earlier he also would have investigated with whom Byrd was housed in jail at the time and possibly found out if Byrd indicated that he was going to testify and get a deal.
[5] It is not now nor has it ever been asserted by Sowers that this delay was anything other than inadvertent.
[6] Richardson v. State, 246 So.2d 771 (Fla. 1971).