FARMER, J.
In this appeal from a conviction for aggravated battery, we are primarily concerned with the state’s last minute unveiling of an impeachment witness to testify against Defendant on the substantive issue of guilt. The surprise witness was called to contradict the testimony of the state’s lead-off witness, another person prosecuted and convicted in connection with the same incident, who was also a cousin of Defendant and reluctant to testify. The previously unnamed impeachment witness was a lawyer in the state attorney’s office unconnected with the case, whose involvement was unknown to the defense. We reverse.
Defendant was charged with attempted first degree murder. Essentially, the victim and his own cousin encountered Defendant while walking home. Defendant and the victim’s cousin had an earlier altercation over a bicycle. The cousin approached Defendant and pushed him. A fight ensued. The victim attempted to stop it but, instead, ended up embroiled in it. A crowd gathered, some of whom also tried to stop the struggle. At one point, the victim saw Barnes, Defendant’s cousin, come onto the scene and hand a weapon to Defendant and say in Creole, “here, MU him.” While the victim testified that he then saw Defendant grab the gun from Barnes, at that point he began to flee and did not see who fired the gun. Shots hit him in the leg and another grazed his stomach. Defendant was later arrested.
Before trial began the state moved to declare Barnes a hostile witness. The state argued that Barnes, a juvenile, had already been committed to a level 10 facility as a result of a no contest plea for his participation in the event. The state also argued that Barnes and Defendant were cousins and that Barnes did not want to testify against Defendant. The court reserved ruling, preferring to see what transpired at trial.
The state called Barnes as its first witness at trial. Barnes maintained that he was riding home on a bicycle when he saw two boys accost Defendant. He said he was then hit by a car and thrown off his bike. Dazed from the incident, he was aware of the fight continuing and proceeded into the melee. He pulled a gun from his pocket and told the victim and the victim’s cousin to stop. He said that his purpose was to scare them and end the altercation. As the fighting ceased, he said that somebody snatched the gun from his grasp. He could not identify the snatcher. After repeated inquiries by the state, Barnes testified that at the time he was still dazed from being hit by the car and, thus, did not know who had seized the gun from his hand.
Immediately after the testimony of Barnes, the state moved to amend its witness list to add a new witness, Amoroso. The prosecutor explained that on the morning of trial Amoroso was present at a conversation between the trial prosecutor and Barnes. During this conversation Barnes had confirmed that Defendant was the shooter. Defendant immediately moved for a mistrial and requested a Richardson hearing. He argued that this was his first notice he had been given that Amoroso would be a witness. He asked the court to exclude Amoroso’s testimony.
During an ensuing colloquy between the trial judge and counsel, the state explained that the trial testimony of Barnes was inconsistent with earlier statements he had given. Specifically, the state contended, Barnes had previously told the prosecutor *327 that it was Defendant who grabbed the gun and shot the victim. Because of doubts about the reliability of Barnes, however, the prosecutor had asked Amoro-so to accompany him that morning to speak to Barnes, who had repeated the same statement to the prosecutor. The trial court ruled:
“[T]he State has related that information came to light as recently as a few hours ago, and in terms of the statement from this witness, certainly it would not have been known what Mr. Barnes would say from the stand until we all heard Mr. Barnes testimony, which was minutes ago, literally. I don’t believe that the State would have any other way of knowing definitively what Mr. Barnes would say. We can [sic.-cannot?']&ll anticipate what someone might say. I’m going to find there was no Richardson violation.”
Although the trial court offered to allow a deposition of Amoroso, defense counsel elected not to do so. Nonetheless, the court ordered Amoroso to make himself available should counsel change his mind. Amoroso then testified that Barnes had said that “my cousin snatched the gun from my hand and then shot [the victim].” Defendant rested without offering any evidence. The jury returned a verdict of guilty of the lesser included offense of aggravated battery.[1]
The question is whether a discovery violation occurred and, if so, whether Defendant was procedurally prejudiced by it. See Richardson v. State, 246 So.2d 771 (Fla.1971) (reversal of a conviction necessary if the record discloses noncompliance with mandatory pretrial disclosure of witnesses that prejudiced Defendant); and Reese v. State, 694 So.2d 678 (Fla.1997) (prejudice inquiry must focus on procedural rather than substantive prejudice; court must determine whether violation impaired Defendant’s ability to prepare for trial). Here the court implicitly found that a discovery violation occurred but that it was inadvertent and unavoidable. The court failed, however, to make any inquiry as to whether Defendant was prejudiced in his preparation for trial.
We agree with the trial judge’s finding that a discovery violation occurred, but the record does not support the finding that the failure to disclose the witness, Amoro-so, was inadvertent and unavoidable. The state knew that after the shooting the victim had been unable to identify the shooter. Several weeks later, however, the victim had advised the police that he now knew who had done so. He said that as he was fleeing he turned and saw Defendant grab the gun and fire the shots. The state’s appreciation of how weakened was this change is underlined by its very determination to adduce another witness to identify the shooter.
It was also not seriously disputed by the state at trial that its misgivings about the reliability of Barnes predated the morning of trial. The state knew it had good reason to distrust him: it had prosecuted him and was conscious of his relationship to Defendant. The problem with Barnes as its primary witness against Defendant was thus something the state actually foresaw and worried over. It did not emerge unexpectedly at trial, as the trial judge suggested in his ruling permitting the testimo *328 ny. The very fact that the state wanted Barnes declared a hostile witness before he took the stand and that the prosecutor had someone accompany him to the morning interview with Barnes is irrefutable proof of the state’s knowledge that Barnes was likely to testify favorably to Defendant at trial. Clearly, the state was not unexpectedly confronted with an unforeseen necessity to impeach Barnes by his pretrial statements. There is no reason suggested by the state why it would have to wait until the morning of trial to do so.
As we previously indicated, the state needed Barnes to identify Defendant as the shooter. The last minute use of a previously undisclosed witness to make the testimony of Barnes sufficiently incriminating supplied this need for the state’s case. Going into the trial, defense counsel understood that the state’s only witness naming Defendant as the shooter would be Barnes. It is thus obvious to us that defense counsel’s trial strategy was directly affected by the sudden introduction of Amoroso as a state witness. Prejudice to defense counsel in his trial preparation and planning is thus manifest. We therefore conclude that the discovery violation resulted in palpable prejudice against Defendant.
It is impossible to say that this error was harmless. State v. Schopp, 653 So.2d 1016, 1020-21 (Fla.1995) (“In determining whether a Richardson violation is harmless, the appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defense.... This analysis recognizes the procedural prejudice inherent in discovery violations.”). Again we are here concerned with the only real evidence that Defendant was the shooter. The state’s last minute use of a previously unnamed impeachment witness on the critical evidence of guilt manifestly presents “a reasonable possibility that the Defendant’s trial preparation or strategy would have been materially different had the violation not occurred.” Schopp, 653 So.2d at 1020. It is thus necessary to afford him a new trial.
REVERSED.
DELL and SHAHOOD, JJ., concur.

. Defendant was initially sentenced under the 1995 sentencing guidelines to 72 months with credit for time served. After this appeal was filed, we relinquished jurisdiction to the trial court to consider Defendant’s motion to correct an illegal sentence on the basis of Heggs v. State, 759 So.2d 620 (Fla.2000). At a new sentencing hearing, the court resentenced Defendant under the 1994 sentencing guidelines to 65 months with appropriate credit. The case has since been returned to us for our disposition on the conviction.