971 So.2d 106 (2007)
Arthur BARNHILL, III, Appellant,
v.
STATE of Florida, Appellee.
Arthur Barnhill, III, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC06-1803, SC06-275.
Supreme Court of Florida.
October 25, 2007.
Rehearing Denied December 13, 2007.
*108 Bill Jennings, Capital Collateral Regional Counsel, and Robert T. Strain, Assistant CCRC  Middle Region, Tampa, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, FL, and Barbara C. Davis, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Arthur Barnhill, III appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow we affirm the trial court's order denying postconviction relief and deny the petition for a writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
On direct appeal, this Court summarized the facts in this case as follows:
Arthur Barnhill, III, (Barnhill) was raised by his grandparents after his mother essentially abandoned him and his father was imprisoned. When he was 20 years of age, Barnhills grandparents asked him to leave the house because Barnhill did not follow their rules. He went to live with the family of his friend, Michael Jackson, a codefendant in this case. He lived with the Jacksons for approximately two weeks before he was asked to leave their home as well. Barnhill decided to go to New York, where his girlfriend lived. To get there, Barnhill planned to steal a car and money from Earl Gallipeau, who was 84 years old. Gallipeau was a lawn service customer of Barnhills grandfather. Barnhill and Gallipeau met when Barnhill did lawn work for his grandfather at Gallipeaus house.
On Sunday, August 6, 1995, Barnhill and Michael Jackson walked to Gallipeaus house to steal Gallipeaus car. They entered the house through the garage and waited in the kitchen for approximately two hours. Gallipeau was in another room watching television. According to Michael Jackson, it was not until they were in Gallipeaus kitchen that Barnhill revealed his plan to kill Gallipeau before taking the car. At that point, Jackson abandoned the enterprise and left. At least one witness saw Michael Jackson walking alone in Gallipeaus neighborhood away from Gallipeaus house.
When Gallipeau got up from watching television and went into the kitchen, Barnhill ambushed him and attempted to strangle him. When the attempt failed, Barnhill got a towel to use as a ligature around Gallipeaus neck. The second attempt was unsuccessful, so Barnhill removed Gallipeaus belt from *109 around his waist and wrapped it around Gallipeaus neck four times, breaking Gallipeaus neck and killing him. Barnhill then dragged Gallipeau through the house to a back bedroom and left him there.
Barnhill took Gallipeaus money, wallet, keys, and car, and eventually met Jelani Jackson, Michael Jacksons brother. Barnhill and Jelani Jackson drove to New York and Barnhill went to his girlfriends apartment. Shortly thereafter, New York police located Gallipeaus vehicle, found Barnhill, and arrested him on an old warrant.
Barnhill told police that he was at Gallipeaus house with Jelani Jackson, but that Jelani Jackson actually killed Gallipeau and he only held Gallipeaus hands down to help. This, Barnhill indicated, explained the presence of Gallipeaus blood on his shirt. Barnhill filed a motion to suppress his statement to police and evidence obtained during his arrest, which the trial court denied. Within ten days after the suppression hearing, defense counsel requested a competency hearing for Barnhill. After counsel requested the competency hearing, he filed a motion to disqualify the trial judge based on certain comments made at the suppression hearing. The trial judge denied the motion to disqualify. Barnhill thereafter entered pleas of no contest to first-degree murder, burglary of a dwelling while armed, armed robbery, and grand theft. The trial court made a finding of guilt as to each charge.[1]
Barnhill v. State, 834 So.2d 836, 840-41 (Fla.2002).
The case proceeded to the penalty phase where both aggravating and mitigating evidence was presented. The jury recommended death by a vote of nine to three. After a Spencer[2] hearing, the trial court sentenced Barnhill to death. On direct appeal, Barnhill raised seven issues. In affirming the conviction and sentence, this Court rejected all the arguments raised.
Barnhill filed a petition for writ of certiorari to the U.S. Supreme Court which was denied. See Barnhill v. Florida, 539 U.S. 917, 123 S.Ct. 2281, 156 L.Ed.2d 134 (2003). Barnhill filed a motion to vacate judgments of conviction and sentences on December 1, 2003, pursuant to Florida Rule Criminal Procedure 3.851. The motion was amended on February 16, 2004, and June 8, 2004. An evidentiary hearing was held on May 19 and 20, 2005. The witnesses at the hearing included Barnhill's trial attorneys Arthur Haft and second chair, Timothy Caudill; Delores Barnhill (Barnhill's grandmother); Arthur Barnhill, Jr. (Barnhill's father); Andrew Gruler (social worker); Dr. Bard Fisher (clinical forensic psychologist); Dr. Harry McClaren (clinical forensic psychologist); and Dr. Jeffrey Danziger (psychiatrist). The trial court denied the motion on January 12, 2006. Barnhill has appealed the denial to this Court, raising ten claims, and he has also filed a petition for writ of habeas corpus, raising one claim.

ANALYSIS

Rule 3.851 Claims

Ineffective Assistance of Counsel Claims
Following the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court held that *110 for ineffective assistance of counsel claims to be successful, two requirements must be satisfied: (1) the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards, and (2) the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. See Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986).
As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). For the second prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 695, 104 S.Ct. 2052; see also Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
A court considering a claim of ineffectiveness of trial counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied. See Maxwell, 490 So.2d at 932. Additionally, where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument. See Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).
Generally, this Court's standard of review following a denial of a postconviction claim where the trial court has conducted an evidentiary hearing affords deference to the trial court's factual findings. See McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). "As long as the trial court's findings are supported by competent substantial evidence, `this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.'" Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla. 1984)). However, the circuit court's legal conclusions are reviewed de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
Additionally, there is a strong presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. See id. at 689, 104 S.Ct. 2052; see also Rivera v. Dugger, 629 So.2d 105, 107 (Fla.1993). The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). In Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000), this Court held that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered *111 and rejected and counsel's decision was reasonable under the norms of professional conduct."

Failure to File Motion to Withdraw Plea
Barnhill first alleges trial counsel rendered ineffective assistance by failing to file a motion to withdraw his guilty plea that was entered, over counsel's objections, at the start of the guilt phase of his trial. Barnhill asserts counsel's query regarding his competency to proceed after the entry of plea coupled with the court-ordered competency evaluations should have led to a formal motion to withdraw the plea. Conversely, the State argues Barnhill failed to allege that he wished to withdraw his plea or that counsel prevented him from withdrawing his plea. Additionally, the State argues Barnhill failed to allege that the plea was not voluntary or that he was incompetent at the time.
Barnhill pled guilty over counsel's objection at the start of the guilt phase on October 14, 1998, and the trial court conducted a full plea colloquy addressing the voluntariness of the plea. The next day trial counsel, Arthur Haft, advised the court that he noticed a drastic change in Barnhill's behavior and questioned Barnhill's competency to proceed when Barnhill told them he wanted the death penalty. Haft informed the court Barnhill wore a suit to court every day except this day and he noticed the change before the plea was entered which may have resulted in the plea being an emotional decision. The trial court inquired of Barnhill on his choice to plead and request for the death penalty. Barnhill indicated he was able to understand the proceeding, he was sound of mind and able to act in his own interest.
Second chair trial counsel, Timothy Caudill, requested that the doctors evaluate Barnhill to determine if he was competent at the time he entered the plea. The trial court inquired of counsel if he felt Barnhill was competent at the time of plea to which Caudill responded, "Yes sir, I did." The request was denied. The guilt-phase jury was released and the trial court ordered two experts to examine Barnhill. Dr. Danziger, one of the court-ordered experts, submitted a report that competency was no longer an issue and the court declared Barnhill competent. Subsequently, a jury was selected for a penalty phase.
An ineffective assistance of counsel claim involving a guilty plea is determined by the same deficient performance prong as Strickland while the second prong involves the defendant demonstrating "a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." Grosvenor v. State, 874 So.2d 1176, 1179 (Fla.2004) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). This Court has found strategic decisions do not constitute ineffective assistance of counsel if alternative courses of action have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct. See Robinson v. State, 913 So.2d 514, 524 (Fla.2005); Brown v. State, 894 So.2d 137, 147 (Fla.2004).
The record reflects counsel was not deficient by failing to file a motion to withdraw the guilty plea. Both trial attorneys testified at the evidentiary hearing on this issue. When counsel noticed Barnhill's changed mental state, they immediately advised the court and medical assistance was provided. Haft testified on direct and cross-examination that Barnhill never indicated to him that he wanted to withdraw the plea. Haft testified that Caudill's notes reflect that Caudill may have spoken to Barnhill about withdrawing the plea. However, Haft could not remember Barnhill wanting to withdraw his *112 plea. Haft testified that there were discussions regarding withdrawing the plea and whether or not withdrawal would be viewed as "jerking the court around." Haft said the decision was made not to withdraw the plea but to use it as a mitigating factor.
Caudill testified that after viewing his notes it was apparent that Barnhill initially wanted to withdraw the plea. However, when he spoke with Barnhill about the ramifications of doing so, Barnhill indicated he understood it was not the best thing for him to do. Caudill also testified on cross-examination that he did not recall any further discussion on the issue after the meeting where the decision was made not to withdraw the plea. Both attorneys testified that after consultation with the defendant, a strategic decision was made not to withdraw the plea.
In addition, Dr. Fisher and Dr. Danziger testified at the evidentiary hearing regarding Barnhill's mental state at the time of and after the plea. Dr. Fisher testified that Barnhill suffered a brief reactive psychosis as a response to specific stressors. Specifically, Dr. Fisher testified and agreed with Dr. Danziger's report that Barnhill's reaction was due to the impact of the guilty plea in this case. Dr. Fisher also testified that Barnhill suffered from prior depression brought on by the events in his life prior to his arrest. Dr. Danziger testified that he saw Barnhill for the first time three days after entry of the plea. He testified Barnhill was alert, fully oriented, and his mood was good; he diagnosed him with a brief reactive psychosis which was being resolved. Dr. Danziger also said that at the time of the plea, Barnhill was not suffering from a psychotic disorder but the psychotic disorder developed after the plea.
The trial court found that no formal finding of incompetency was made and that ultimately Barnhill had been found to suffer from a "brief reactive psychosis," a temporary psychotic episode triggered by extreme stress. Based on the experts' testimony and that of counsel, the trial court further found that Barnhill was acting normal on the day of the plea and there was no reasonable belief that he was incompetent at the time that he entered the plea. Barnhill has failed to show any deficient performance on counsel's part. Barnhill discussed the issue with his attorney, and a reasonable strategic decision was made to forego withdrawing the plea. There is competent, substantial evidence supporting the trial court's finding that counsel was not deficient.
Because deficient performance has not been demonstrated, we need not examine the prejudice prong of Strickland. Ineffective assistance of counsel has not been demonstrated, and the trial court properly denied relief on this issue.

Motion to Disqualify
Barnhill argues counsel rendered ineffective assistance by filing and arguing a legally insufficient motion to disqualify the trial judge. Barnhill asserts that this Court's ruling on direct appeal finding the motion legally insufficient, in essence, found trial counsel ineffective as a matter of law. He further asserts that counsel's verbal renewal of the motion at the start of the penalty phase instead of a current, written, and more legally sufficient motion and affidavit was further evidence of ineffective assistance. Barnhill alleged in the motion to disqualify that he had a well grounded fear that the judge would not be fair and impartial because of the judge's finding that Barnhill was untruthful when he testified that he was living with his girlfriend. The motion to disqualify the trial judge was denied by the trial court and raised as an issue on direct appeal. See Barnhill, 834 So.2d at 842-43. This *113 Court affirmed the trial court's ruling that the motion was technically insufficient because the supporting affidavit made by Barnhill did not state the specific facts which led him to believe he would not receive a fair trial.
Barnhill has failed to show that counsel's performance in filing the motion to disqualify, which was ultimately found to be legally insufficient, was ineffective assistance of counsel. As argued extensively on direct appeal, even if counsel had filed an amended legally sufficient motion, the allegations contained within did not warrant disqualification. The statement attributable to the judge would not have led a reasonable person to believe he or she would not receive a fair trial. A mere "subjective fear of bias will not be legally sufficient; rather, the fear must be objectively reasonable." Arbelaez v. State, 898 So.2d 25, 41 (Fla.2005). The statement was made in the context of ruling on the motion to suppress and thus the motion to disqualify was legally insufficient in that respect. Therefore, counsel was not deficient because the motion was based on that allegation. Accordingly, Barnhill has failed to show ineffective assistance of counsel.

Voir Dire
Barnhill also argues trial counsel's questioning during voir dire was ineffective, deficient, unreasonable, and constituted ineffective assistance of counsel. Barnhill argues Haft's questioning was rambling, disjointed and nonsensical, and confused the jury. Furthermore, he contends that Haft skipped over and abandoned the opportunity and duty to question jurors Robinson and Lowe and that this failure undermined confidence in the outcome of the penalty phase. Conversely, the State argues Barnhill failed to allege prejudice or any bias by the jurors who actually served.
Barnhill's claim that counsel ineffectively handled voir dire because his questioning was rambling, disjointed, and confused the jury was raised on direct appeal in two claims. See Barnhill, 834 So.2d at 843-47. On direct appeal, this Court found there was competent evidence in the record to support the trial court's decision to excuse at least two jurors for cause, and we denied relief on the claims. Id. at 846. Additionally, this Court addressed Barnhill's issue from voir dire that the trial court unreasonably limited defense counsel's voir dire and unreasonably limited and restricted trial counsel by repeatedly interrupting, chastising, and threatening to replace counsel. This Court found that the trial court did not unreasonably limit counsel's voir dire but simply tried to help defense counsel focus more precisely on the questions he was asking. Additionally, this Court found that the trial court's interruptions were outside the hearing of the jury and were intended to make counsel's questions clearer.
Haft testified at the evidentiary hearing that he did not remember the specifics of the discussion during the trial court's interruptions. However, he remembered the side bar because the trial court believed his questions were not helpful. Haft further testified that he thought there was a reason but he could not exactly remember his thought process in terms of why he did not return to juror Robinson. As to juror Lowe, Haft said that he did not recall the reason he did not question the juror after the trial court's query regarding predispositions about the death penalty.
While in hindsight counsel reflects his questioning could have been done differently, this Court found and the record supports the finding that counsel was competent in his questioning during voir dire. Barnhill asserts conclusory allegations that *114 the outcome of the trial would have been different if counsel's questioning had been done differently. Barnhill has not alleged, much less demonstrated, that any of the jurors who sat were prejudiced as a result of any action or inaction by counsel. This Court has repeatedly held "conclusory allegations are insufficient to warrant relief" on an ineffective assistance of counsel claim. Wright v. State, 857 So.2d 861, 877 (Fla.2003). Moreover, a review of the record reveals venirepersons Robinson and Lowe were never selected for the jury or even as alternates. Barnhill has failed to allege or demonstrate prejudice based on counsel's voir dire questioning; therefore, he has failed to demonstrate that counsel was ineffective.

Mitigating Evidence
Barnhill further argues trial counsel rendered ineffective assistance through inadequate preparation, investigation, and presentation of mitigating evidence. He contends trial counsel failed to interview Barnhill's father and present him as a penalty-phase witness. Additionally, Barnhill asserts trial counsel failed to visit certain family members in New York and limited Barnhill's social history to the mother's component of the family history. The State contends trial counsel had legitimate, strategic reasons for not calling certain witnesses, in particular the father, and that the evidence presented at the evidentiary hearing was cumulative to the mitigation presented at the penalty phase.
During the penalty phase, trial counsel presented thirteen mitigation witnesses, including Barnhill's paternal grandmother, aunts, cousins, school friends, Dr. Eisenstein, and Dr. Gutman. The lay witnesses essentially testified concerning the defendant's childhood of abuse, neglect, and abandonment, difficulty in school, and his limited contact with his father. See Barnhill, 834 So.2d at 841. Dr. Eisenstein testified that Barnhill suffers from ADHD, is learning disabled, and may have frontal lobe impairment. He also said that Barnhill was not antisocial. Dr. Gutman testified at the penalty phase concerning psychological testing he performed on the defendant. While he disagreed with Dr. Eisenstein's finding of a frontal lobe impairment, he did agree that the testing results from the MMPI left open to interpretation whether such an impairment existed. Based on the testimony of these witnesses, the trial court considered and found a number of mitigating circumstances, including, but not limited to, the facts that Barnhill suffers from a learning disability, has frontal lobe impairment, suffers from psychiatric disorders, had a difficult childhood, and grew up in an environment where the mother favored the daughters. The court also considered and weighed the facts that Barnhill was neglected by his mother, was a poor student, suffered shock and embarrassment when his father was arrested and given a lengthy prison sentence, and was raised essentially by his grandparents.
Trial counsel testified at the evidentiary hearing that he spoke with Barnhill about his family and made tactical decisions concerning which family members would make good mitigating witnesses. Haft also testified that he and Caudill did not have any confidence in what the mother might say; they had a difficult time contacting her at first, and it seemed Barnhill's sisters, who were hostile to Barnhill, ran that household. Counsel testified that both Barnhill and other people informed them about the sisters' hostility; Barnhill did not want them to contact his sisters.
Counsel further testified that they discussed with Barnhill his father, who was in prison. The discussion focused on whether *115 or not the father should be used as a witness during the penalty phase. Counsel testified they went through the father's court files to see what crimes he was charged with and sentenced for before making a decision. In the final analysis, it was decided that there were other family members to present whose reputation and veracity would not be an issue. They had available as witnesses the mother's sister, maternal grandmother, a maternal aunt, maternal uncle, and paternal grandparents. Thus, counsel made a strategic decision that testimony from Barnhill's father would not advance their theory of the case.
Barnhill's father testified at the evidentiary hearing that he only learned about his son's charges through communication with his mother, Barnhill's grandmother, and through the prison's law library. He said he was never contacted by defense counsel's office during his son's trial, and he would have been willing to testify on his son's behalf. Barnhill's father testified concerning his times in prison; his treatment of women, including his son's mother; and his belief that he was not the defendant's father. He also testified he was physically abusive to Barnhill.
Andrew Gruler, a clinical social worker, testified at the evidentiary hearing. He constructed a genogram, family tree, for Barnhill which showed no contact between Barnhill and his sisters and, in fact, revealed broken lines between Barnhill and his father, mother, and sisters. Gruler testified he gathered various accounts from several of Barnhill's family members which revealed he had a hard life. Gruler's testimony corroborated the testimony of family members presented at the penalty phase and in particular corroborated the testimony from Deloris Barnhill, who testified at both the penalty phase and the 3.851 evidentiary hearing.
Dr. Fisher, a clinical forensic psychologist, testified at the evidentiary hearing concerning the mitigation presented at the penalty phase. Dr. Fisher indicated that he reviewed the testing done by Dr. Riebsame and Dr. McClaren. Dr. Riebsame examined Barnhill during the original proceedings but did not testify at the penalty phase.[3] Dr. McClaren was the State's expert witness at the penalty phase. Dr. Fisher testified that Barnhill suffered from depression as a result of all the stressors in his life but did not believe he was psychotic. Essentially, Dr. Fisher testified there were numerous mitigators in Barnhill's life presented at the evidentiary hearing that were consistent with a conduct disorder, a prerequisite to a diagnosis of antisocial personality disorder.
Dr. McClaren, a clinical and forensic psychologist, and Dr. Danziger, a psychiatrist, testified for the State at the evidentiary hearing. Dr. McClaren testified that Barnhill suffered from a depressive disorder and he also has an antisocial disorder. He indicated the diagnosis is evident from Barnhill's life history of setting fires, fighting, and stealing. This diagnosis is consistent with Dr. Fisher's diagnosis as well as Dr. Riebsame's.
Although additional witnesses were presented at the evidentiary hearing, the record supports the court's findings that counsel adequately investigated and prepared mitigating evidence for the penalty phase. During the penalty phase, the defense presented a number of witnesses *116 who testified about Barnhill's social history. While counsel chose not to call the mother and sisters as witnesses after investigation and discussion with the defendant, the facts of his childhood were nonetheless presented through other family members and friends. Nothing of a significant difference was presented at the evidentiary hearing; the testimony that was presented is cumulative to and corroborates the evidence that was presented at the penalty phase. Even with the mental health testimony, the testimony at the evidentiary hearing was consistent in finding that Barnhill suffers from antisocial personality disorder. However, counsel's decision to use Dr. Eisenstein and not Dr. Riebsame at the penalty phase resulted in the presentation of a mental health picture by the defense that did not include testimony concerning antisocial personality disorder.
The fact that there were other witnesses available who could have testified concerning Barnhill's upbringing and his mental health does not demonstrate that counsel was ineffective in choosing the theory and strategy that was presented at the penalty phase. Barnhill simply has not demonstrated a substantial deficiency on the part of counsel that has undermined our confidence in the penalty phase proceeding. We, therefore, affirm the trial court's denial of relief on this issue.

Closing Arguments
Barnhill contends trial counsel was ineffective because his closing argument indicated counsel's own doubts or distaste for the case, and this was prejudicial and deprived Barnhill of a fair trial. The State argues trial counsel's closing argument was not deficient and Barnhill's assertions to the contrary are based on taking the argument out of context. Additionally, the State contends Barnhill cannot show prejudice from the closing argument because the four aggravating circumstances proven in this case would result in a sentence of death even with a perfect closing argument.
Defense counsel Haft testified at the evidentiary hearing that he had no distaste for Barnhill, and that there was nothing in this crime that would affect his allegiance to his client. Haft said that his statement that the jury might feel anger after seeing such a tragic death was made to establish some credibility with the jury. He said that acknowledgement of the gravity of first-degree murder is one way of establishing some credibility. He did not want the twelve people who were casting votes for life or death of the perpetrator to feel his arguments in the penalty phase were devaluing the gravity of the murder. Haft further testified he was urging the jury to keep their emotions out of the deliberations, and decide the case by giving proper weight to the various aggravating and mitigating circumstances. Haft testified he was trying his best to get them to recommend life.
In denying relief on this claim, the court found the excerpts cited from counsel's arguments were taken out of context and must be read with the surrounding arguments, that is, the argument must be read as a whole. We agree and affirm the trial court's determination that trial counsel adequately explained his strategy for arguing the case in the manner that he did. That strategy was a reasonable one given the fact that this was a brutal murder and robbery of an eighty-four-year-old man in his home.
Barnhill has not demonstrated that counsel's performance was deficient, and therefore, we need not determine the prejudice prong. See Strickland.

Interviewing Jurors
Barnhill argues that rule 4-3.5(d)(4) of the Rules Regulating the Florida *117 Bar and Florida Rule of Criminal Procedure 3.575 violate his constitutional right of equal protection and deny him adequate assistance of counsel in pursuing his postconviction remedies. The State argues this issue is procedurally barred because it was not raised on direct appeal. The State also argues that Barnhill fails to identify a specific incident of juror misconduct. We deny relief on this issue consistent with our prior decisions which have found that rule 4-3.5(d)(4) and rule 3.575, which collectively restrict an attorney's ability to interview jurors after trial, do not violate the defendant's constitutional rights. See Power v. State, 886 So.2d 952, 957 (Fla.2004); Sweet v. Moore, 822 So.2d 1269, 1274 (Fla.2002); Johnson v. State, 804 So.2d 1218, 1225 (Fla.2001).

Execution by Lethal Injection
Barnhill argues lethal injection is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. This Court has upheld the constitutionality of lethal injection in Florida after a full evidentiary hearing in Sims v. State, 754 So.2d 657 (Fla.2000). Subsequently, the Court rejected similar challenges to both the lethal injection statute and the execution protocol. Diaz v. State, 945 So.2d 1136, 1144-45 (Fla.), cert. denied, ___ U.S. ___, 127 S.Ct. 850, 166 L.Ed.2d 679 (2006); Rolling v. State, 944 So.2d 176, 179 (Fla.), cert. denied, ___ U.S. ___, 127 S.Ct. 466, 166 L.Ed.2d 332 (2006); Rutherford v. State, 926 So.2d 1100, 1113-14 (Fla.), cert. denied, 546 U.S. 1160, 126 S.Ct. 1191, 163 L.Ed.2d 1145 (2006); Hill v. State, 921 So.2d 579, 582-83 (Fla.), cert. denied, 546 U.S. 1219, 126 S.Ct. 1441, 164 L.Ed.2d 141 (2006).
However, because there is ongoing litigation concerning Florida's lethal injection protocol as a result of the execution of Angel Diaz, we deny Barnhill relief on this claim without prejudice to pursue any available remedies he may have in the appropriate trial court.

Jury Instructions
Barnhill argues the asserted jury instructions were in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments by diminishing the jury's responsibility, shifting the burden of proof to Barnhill, and were premised on unconstitutionally vague and overbroad aggravators. Additionally, Barnhill argues counsel rendered ineffective assistance by not litigating and preserving these issues. We deny relief because this Court has repeatedly held the standard jury instructions fully advise the jury of the importance of its role, correctly state the law, and do not denigrate the role of the jury.[4]See Miller v. State, 926 So.2d 1243, 1257 (Fla.2006) (rejecting the claim that the jury instructions dilute the jury's sense of responsibility); Rodriguez v. State, 919 So.2d 1252, 1280 (Fla.2005) (rejecting the claim that the standard jury instructions impermissibly shift the burden to the defendant to prove that death is not the appropriate sentence); Card v. State, 803 So.2d 613, 628 (Fla.2001) (finding the decision in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), not applicable in Florida); Brown v. State, 721 So.2d 274, 283 (Fla.1998) (finding the standard jury instructions fully advise the jury of the importance of its role, correctly state the law, and do not denigrate the role of the jury); San Martin v. State, 705 So.2d 1337, 1350 n. 5 (Fla.1997) (concluding *118 that the weighing provisions of Florida's death penalty statute and the accompanying jury instructions do not unconstitutionally shift the burden of proof).[5]

Cumulative Errors
Barnhill argues the repeated instances of ineffective assistance of counsel, flawed jury instructions, and an unconstitutional process cumulatively deprived him of a fundamentally fair trial. Because all of the allegations of individual legal error are without merit, a cumulative error argument based upon these errors must also fail. The instances of ineffective assistance of counsel, flawed jury instructions, and unconstitutional process as alleged by Barnhill are without merit. See Griffin v. State, 866 So.2d 1, 22 (Fla.2003) (holding that a cumulative error claim must fail where individual claims of error alleged are either procedurally barred or without merit).[6]

Habeas Corpus Claim

Incompetency at Time of Execution
Barnhill concedes that his claim involving competency to be executed is not ripe for review as he has not yet been found incompetent and a death warrant has not been signed. He contends that he is only raising this issue for preservation purposes. This Court has repeatedly found that no relief is warranted on similar claims. See State v. Coney, 845 So.2d 120, 137 n. 19 (Fla.2003) (rejecting the defendant's claim that he is insane to be executed where he acknowledged that claim was not yet ripe and was being raised only for preservation purposes); Jones v. State, 845 So.2d 55, 74 (Fla.2003) (finding claim that defendant may be insane to be executed "not ripe for review" where defendant was not yet found incompetent and death warrant not yet been signed; noting that defendant made claim "simply to preserve it for review in the federal court system"); Hall v. Moore, 792 So.2d 447, 450 (Fla. 2001) (stating that it is premature for a death-sentenced individual to present a claim of incompetency or insanity, with regard to his execution, if a death warrant has not been signed).
Thus, Barnhill's claim on this issue is denied.

CONCLUSION
For all the foregoing reasons, we affirm the trial court's denial of Barnhill's motion for postconviction relief and deny the petition for writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The facts and evidence are sufficient to demonstrate first-degree murder and Barnhills participation as a principal.
[2] Spencer v. State, 615 So.2d 688 (Fla.1993).
[3] Trial counsel made a strategic decision not to use Dr. Riebsame at the penalty phase because he diagnosed Barnhill with antisocial disorder, which was contrary to the defense's mitigation theory of trying to show Barnhill was abused and neglected but had redeeming qualities. Moreover, during an interview with Dr. Riebsame, Barnhill revealed a different version of the murder that made him seem more culpable.
[4] Because we are denying relief on the merits of this claim, counsel cannot be ineffective for failing to object to jury instructions which this Court has upheld against the constitutional challenges being asserted here. See, e.g., Thomas v. State, 838 So.2d 535, 541 (Fla. 2003).
[5] Barnhill litigated the issue concerning the jury instructions on the aggravating circumstances on his direct appeal and cannot relitigate the issue on postconviction. See Barnhill, 834 So.2d at 849-51.
[6] Barnhill also makes an argument concerning the constitutionality of Florida's capital sentencing scheme relying on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Because we have consistently denied relief on such claims, we do not address the issue any further.