979 So.2d 1189 (2008)
Oscar GARCIA, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-1011.
District Court of Appeal of Florida, Fourth District.
April 23, 2008.
*1190 J. David Bogenschutz of Bogenschutz, Dutko & Kroll, P.A., Fort Lauderdale, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Thomas A. Palmer, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
When the trial court denied his motion to suppress, Oscar Garcia entered a plea and was sentenced for trafficking in oxycodone and possession of hydrocodone, reserving his right to appeal the denial of the motion to suppress. We affirm the convictions, as the trial court did not err in determining that the contact with the officers was voluntary. Although we conclude that appellant was in custody for Miranda purposes after he gave the officers a hydrocodone pill, he was not subject to interrogation within the meaning of Miranda.
A drug task force of five to ten detectives from various jurisdictions was surveilling Shannon Madej, who was suspected of drug activity, when they observed him pick up Oscar Garcia and proceed to the parking lot of a bar where Madej allegedly dealt drugs. The detectives observed both Madej and Garcia exit the car. Two officers, Detectives Williams and Swiger, from the Davie Police Department approached Garcia, while others detained Madej.
The officers did not know Garcia, nor had his name come up in connection with Madej. Williams explained to Garcia that they were conducting a narcotics investigation. He asked if Garcia would speak with them, and when Garcia assented, he asked him to step a few feet away from the vehicle, which Garcia did. Williams explained why the federal agents had made *1191 contact with Madej, i.e., to investigate Madej's drug related activities, and asked Garcia if he had anything illegal in his possession. Garcia said yes, he had a pill in his pocket. Williams asked which pocket and Garcia produced a pill from his right pocket, giving it to Swiger. Garcia identified the pill as being hydrocodone. At the point that Garcia produced the pill, Swiger testified that Garcia was detained and not free to leave.
Williams took the pill to Detective Crispin, who had been questioning Madej. Because of the discovery of the pill, which would be an illegal substance without a prescription, Crispin then spoke with Garcia. Garcia told him that he had a prescription. Crispin asked for the prescription, and Garcia told him it was at his house. Crispin asked Garcia to consent to a search of his house to get the prescription, to which Garcia agreed. Garcia signed a consent form. The detectives then drove Garcia back to his house in their police vehicle.
At the house, the officers discovered a locked safe which was opened with a key on Garcia's key ring, which Garcia had given to Detective Williams. The officer opened the safe and discovered oxycodone pills. At that point, the officers gave Garcia Miranda warnings and took a statement from him. He was subsequently charged with trafficking in oxycodone and possession of hydrocodone.
Garcia testified at the suppression hearing, explaining that he felt compelled to give the officers the pill in his pocket. He also confirmed that Crispin had asked him for his prescription, and Garcia told him it was in his truck at his house. Crispin told him that if he would sign a consent to search form, Crispin would "most likely let me go." Garcia did not understand that the search would include his house.
The trial court denied the motion to suppress, concluding that the initial encounter between the officers and Garcia was consensual. The court found that Garcia was not detained, the consent to search was voluntary, and the search did not exceed the scope of the consent. Garcia appeals.
"[A] trial courts ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial courts ruling." Pagan v. State, 830 So.2d 792, 806 (Fla.2002). On appeal, the court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court. Barnhill v. State, 971 So.2d 106, 110 (Fla.2007) (quoting Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997)). However, the appellate court "must independently review mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendment and, by extension, article I, section 9 of the Florida Constitution," Connor v. State, 803 So.2d 598, 608 (Fla.2001), and must "review legal conclusions de novo." Backus v. State, 864 So.2d 1158, 1159 (Fla. 4th DCA 2003).
In Popple v. State, 626 So.2d 185, 186 (Fla.1993), the Florida Supreme Court held that "[t]here are essentially three levels of police-citizen encounters." First, "a consensual encounter [which] involves only minimal police contact;" second, "an investigatory stop as enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);" and third, "an arrest which must be supported by probable cause that a crime has been or is being committed." Id.
If the stop is consensual, "a citizen may either voluntarily comply with a *1192 police officer's requests or choose to ignore them." Id. In Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the United States Supreme Court explained that "mere police questioning does not constitute a seizure." Police officers do not run afoul of the Fourth Amendment by "approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." Id. (quoting Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).
Whether the encounter constitutes a seizure, thereby triggering the citizens constitutional rights, turns on whether a reasonable person would feel free to disregard the police and go about his business. Id. (quoting California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). In answering this question, Florida courts apply a totality of the circumstances analysis. P.W. v. State, 965 So.2d 1197, 1199 (Fla. 4th DCA 2007). Factors indicating a seizure would be the "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. (quoting United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). A seizure occurs when a person submits to an officer's show of authority. Id. (citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).
In State v. Poole, 730 So.2d 340 (Fla. 3d DCA 1999), the Third District held that a police-citizen encounter much like the one in the present case was consensual. The officers involved were canvassing an area in a marked police vehicle in furtherance of a narcotics investigation. One officer wore his uniform and the other was plain-clothed. The officers observed defendant Poole sitting alone on a crate near a street corner around 1:00 p.m. They had no suspicion that she was involved in criminal activity.
The officers approached, identified themselves, and began speaking with Poole from a distance of about two feet. They did not display their weapons. One officer testified that Poole could have walked away without incident; however, they did not expressly inform her that she was free to leave. One of the officers asked Poole whether she had any narcotics in her possession. Poole answered in the affirmative and pulled a homemade crack pipe out of her pocket. The officers arrested Poole for possession of cocaine. The trial court subsequently granted the motion to suppress her statements and the crack pipe.
The Third District reversed on appeal. Applying the totality of the circumstances analysis discussed above, the court held that factors which would indicate a seizure were absent. The officers did not display their guns or, by their language or actions, restrict Poole's ability to leave or to ignore their questions. Therefore, both her actions and her statements were voluntary. In support of its holding, the court explained, "[I]n the absence of any indicia of coercion or intimidating circumstances, police questioning about criminal conduct or activity alone, does not convert an otherwise consensual encounter into an unlawful seizure or detention." Id. at 342.
Other courts have also held that a police-citizen encounter remains consensual, even where the officers ask questions about criminal activity. For example, in P.W. v. State, 965 So.2d 1197 (Fla. 4th DCA 2007), our court held that an officers request to conduct a pat down did not turn *1193 a consensual encounter to an investigatory stop. The First District has noted that absent indicia of coercion or intimidating circumstances, such a question [asking about criminal conduct], alone, will not convert a consensual encounter into an unlawful detention. State v. Ferrell, 705 So.2d 1051, 1052 (Fla. 1st DCA 1998). See also State v. Livingston, 681 So.2d 762, 763-64 (Fla. 2d DCA 1996); State v. Collins, 661 So.2d 962 (Fla. 5th DCA 1995); Jones v. State, 658 So.2d 178, 180 (Fla. 1st DCA 1995).
Here, despite the fact that there were multiple officers present at the scene, none drew their weapons, and no one testified to any use of force. The officers did not order Garcia into a car or otherwise order him about. Although they did not tell him he was free to leave, they noted he could have done so up until the time he produced the pill. The officers testified that the exchanges were cordial and conversational. Under the totality of the circumstances, with the trial court being the arbiter of credibility determinations, the court did not err in finding the initial encounter was consensual.
However, when Garcia produced the pill, the officers themselves did not believe that Garcia was free to leave until they had ascertained its legality. We agree that the officers had reasonable suspicion of illegal activity to justify an investigatory stop and seizure. At that point Garcia was in custody for purposes of Miranda. In Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held, [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. The Florida Supreme Court has held, Miranda warnings are required whenever the State seeks to introduce against a defendant statements made by the defendant while in custody and under interrogation. Davis v. State, 698 So.2d 1182, 1188 (Fla.1997).
Rhode Island v. Innis, 446 U.S. 291, 300, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), considered what constitutes interrogation for purposes of Miranda, concluding that the character of interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself. (footnote omitted). The Court continued:
We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term interrogation under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. . . . A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.
Id. at 300-02, 100 S.Ct. 1682 (first emphasis added) (footnotes omitted).
Our supreme court applied Innis to conclude that obtaining a consent to search does not amount to conduct that the police should know is reasonably likely to elicit an incriminating response. Everett v. State, 893 So.2d 1278 (Fla.2004). There, a murder suspect invoked his right to counsel. Later, the police sought a consent to *1194 take DNA samples from him, to which he agreed. After having been charged with murder, he sought to suppress the DNA samples. The court denied the request, as it concluded that the consent to the DNA samples was not a search reasonably likely to elicit an incriminating response. The right to silence protects only testimonial or communicative acts of a suspect, and the consent itself was neither. Federal courts are in accord that a consent to search is not an interrogation requiring Miranda warnings.[1]See also Timmons v. State, 961 So.2d 378 (Fla. 4th DCA 2007).
Everett applies to this case. Here, the questioning of the officers about Garcias prescription were not intended to incriminate but to exonerate Garcia from criminal activity. The officers secured the consent to search to find the prescription which would preclude charges from being brought. Thus, neither the questioning of Garcia nor the obtaining of the consent to search constituted interrogation requiring Miranda warnings.
In all other respects, we affirm the trial courts rulings, including its determination that the consent to search was otherwise voluntarily given and that the search did not exceed the scope of the consent.
Affirmed.
STONE and FARMER, JJ., concur.
NOTES
[1] Everett, 893 So.2d at 1286-87: We note that most courts that have considered this issue have held similarly. See, e.g., United States v. Shlater, 85 F.3d 1251, 1256 (7th Cir.1996) (holding that a "consent to search is not an interrogation within the meaning of Miranda"); United States v. Hidalgo, 7 F.3d 1566, 1568 (11th Cir.1993) (holding that consent to search obtained after defendant invoked right to remain silent is not a self-incriminating statement because it is neither testimonial nor communicative); United States v. Smith, 3 F.3d 1088, 1098 (7th Cir. 1993) ("We have held that a consent to search is not a self-incriminating statement and, therefore, a request to search does not amount to interrogation. This view comports with the view taken by every court of appeals to have addressed the issue."); United States v. Rodriguez-Garcia, 983 F.2d 1563, 1568 (10th Cir.1993) (stating that a request for consent to search is not custodial interrogation and holding that "consent to search is not the type of incriminating statement which the Fifth Amendment was designed to address"); Cody v. Solem, 755 F.2d 1323, 1330 (8th Cir. 1985) (stating that Fifth Amendment right to counsel stems from privilege against self-incrimination and is not an independent right and that consent to search is not an incriminating statement because it is not testimonial, nor is physical evidence obtained pursuant to search); State v. Morato, 619 N.W.2d 655, 662 (S.D.2000) (stating that "[a]n officer's request that a suspect consent to a search, however, is not an interrogation or its functional equivalent" and "Morato's consent to search does not constitute an incriminating statement"); State v. Crannell, 170 Vt. 387, 750 A.2d 1002, 1009 (2000) (concluding that the request for consent to search did not violate defendant's Fifth Amendment rights); contra United States v. Yan, 704 F.Supp. 1207, 1211-12 (S.D.N.Y.1989) (holding that a request for search constitutes an interrogation); State v. Britain, 156 Ariz. 384, 752 P.2d 37, 39 (Ariz.Ct.App.1988), ("view[ing] a request for consent to search, after the [Fifth Amendment] right to counsel has been invoked, as interrogation and the serving of a search warrant as conduct `reasonably likely to elicit an incriminating response'").