PER CURIAM.
 

 In this case, John Loveman Reese appeals a circuit court order denying, after evidentiary hearing, his postconviction motion to vacate his judgment of conviction of first-degree murder and sentence of death for the murder of Charlene Austin.
 
 See
 
 Fla. R.Crim. P. 3.851. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), Fla. Const. Having considered the issues raised in the briefs and having heard oral argument in this case, we affirm.
 

 I. BACKGROUND
 

 Reese was convicted of first-degree murder, sexual battery with great force, and burglary with assault. We previously summarized the facts of the 1992 murder as follows:
 

 The evidence presented at trial reveals that Reese dated Jackie Grier on and off for seven years; the victim had been Grier’s best friend for approximately two and a half years. Reese was extremely possessive and disliked Austin because of the amount of time Grier spent with her. Grier and Austin had begun making trips to Georgia where, unknown to Reese, both had met new boyfriends. They returned from the last of these trips on Monday, January 27, 1992. On Wednesday of the same week, Grier was concerned because she could not reach Austin by phone, and she and a neighbor went to Austin’s house and entered through the unlocked back door. They found Austin lying face down in the bedroom, covered with a sheet. She had been strangled with an electrical extension cord that was doubled and wrapped around her neck twice with the ends pulled through the loop.
 

 Reese was questioned by police after his palm print was found on Austin’s waterbed. He confessed to breaking into her home around noon on Tuesday, January 28. He said he waited for her to return home because he wanted to talk to her about Grier, but when he saw Austin coming home from work around four o’clock he got scared and hid in a closet. Reese said that after Austin went to sleep on the sofa, he came out of the closet but panicked when she started to move. He grabbed her around the neck from behind and di’agged her into the bedroom. He raped her, then strangled her with the extension cord. He was arrested after his confession.
 

 Reese v. State,
 
 694 So.2d 678, 680 (Fla.1997). The jury recommended and the trial court imposed a death sentence.
 
 Id.
 

 On appeal, we affirmed Reese’s conviction.
 
 Id.
 
 at 685. Finding the trial court’s sentencing order inadequate, however, we remanded for entry of an order that complied with
 
 Campbell v. State,
 
 571 So.2d 415, 419-20 (Fla.1990).
 
 Reese,
 
 694 So.2d at 684. In
 
 Reese v. State,
 
 728 So.2d 727 (Fla.1999), we again remanded the sentencing order. Then, in
 
 Reese v. State,
 
 768 So.2d 1057, 1060 (Fla.2000),
 
 cert. denied,
 
 532 U.S. 910, 121 S.Ct. 1239, 149 L.Ed.2d 147 (2001), we reviewed the revised sentencing order and summarized the trial court’s findings as follows:
 

 The court found three aggravators: (1) the homicide was committed during a burglary and sexual battery; (2) the
 
 *916
 
 homicide was heinous, atrocious, or cruel (HAC); and (3) the homicide was committed in a cold, calculated, and premeditated manner (CCP). The court found no statutory mitigators. The court found seven nonstatutory mitigators: (1) good jail record (minimal weight); (2) positive character traits (minimal weight); (3) defendant’s support of Jackie Grier and her children (very little weight); (4) his possessive relationship with Jackie Grier (minimal weight); (5) emotional immaturity (little weight); (6) possible use of drugs and alcohol around the time of the murder (little weight); and (7) lack of a significant criminal record (very slight weight). The court rejected the following nonstatutory miti-gators: (1) defendant’s adaptability to prison life; (2) childhood trauma other than the death of his mother; (3) emotional or mental impairment at the time of the murder; and (4) use of crack cocaine at the time of the murder.
 

 Id.
 
 at 1058. We rejected Reese’s claims that the trial court erred in evaluating the mitigating circumstances, finding the CCP aggravator, and determining that his death sentence was proportionate, and we affirmed the sentence of death.
 
 Id.
 
 at 1058-59.
 

 Appellant subsequently filed an amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.851, raising numerous claims. The circuit court granted an evidentiary hearing on two claims of ineffective assistance of counsel, and the primary focus of the hearing was the adequacy of the presentation of mental health mitigation in the penalty phase. Following the hearing, the trial court entered orders denying relief on all of appellant’s postconviction claims. Appellant then filed a timely appeal in this Court.
 

 II. THE ISSUES ON APPEAL
 

 In this appeal, appellant contends that (1) trial counsel was constitutionally ineffective for failing to adequately investigate and present mental health mitigation evidence; (2) the rules that prohibit jury interviews are unconstitutional; (3) lethal injection constitutes cruel and unusual punishment; (4) trial counsel was ineffective for failing to object to unconstitutional penalty-phase jury instructions; (5) cumulative error deprived appellant of a fair trial; (6) appellant’s death sentence violates
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and (7) appellant is ineligible for the death penalty under
 
 Roper v. Simmons,
 
 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), and
 
 Atkins v. Virginia,
 
 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).
 
 [1]
 

 III. ANALYSIS
 

 A. MENTAL HEALTH MITIGATION
 

 In his first claim, appellant contends that trial counsel was ineffective for failing to present certain mental health mitigation
 
 *917
 
 evidence in the penalty phase.. Appellant argues that counsel failed to present evidence that appellant was under the influence of an extreme mental or emotional disturbance at the time of the crime — a statutory mitigator.
 
 See
 
 § 921.141(6)(b), Fla. Stat. (1991). This claim rests largely on the assertion that counsel did not request that his mental health expert conduct neuropsychological testing — testing which would have shown that appellant had frontal lobe impairment.
 

 In
 
 Strickland, v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court established a two-pronged standard for determining whether counsel provided legally ineffective assistance. A defendant must point to specific acts or omissions of counsel that are “so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.”
 
 Id.
 
 at 687, 104 S.Ct. 2052. The defendant also must establish prejudice by “showfing] that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Id.
 
 at 694, 104 S.Ct. 2052. A reasonable probability is a “probability sufficient to undermine confidence in the outcome.”
 
 Id.; see Gaskin v. State,
 
 737 So.2d 509, 516 n. 14 (Fla.1999) (“Prejudice, in the context of penalty phase errors, is shown where, absent the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different or the deficiencies substantially impair confidence in the outcome of the proceedings.”).
 

 First, to the extent that appellant argues that counsel did not present any evidence of appellant’s mental or emotional distress at the time of the crime, the record'plainly refutes the claim. Trial counsel had appellant examined by Dr. Harry Krop, who interviewed appellant and others, reviewed relevant records, including trial-related material, and conducted psychological testing. He testified at length during the penalty phase, outlining appellant’s biography and explaining all the factors affecting his psychological profile. During his testimony, trial counsel asked him specifically to address appellant’s mental and emotionál state,at the time of the murder. Although Dr. Krop stated that appellant knew right from wrong, Krop concluded that “when you look at all factors combined, that [have] accumulated, hurt, frustration feelings, he felt desperate to stay in the relationship, coupled with some fear and anxiety that were occurring at the time of the incident, plus the effects of cocaine and alcohol ... his mental state was seriously impaired at the time of the offense.”
 
 [2]
 

 Second, appellant has not demonstrated that counsel was ineffective in failing to request that Dr. Krop conduct neuropsy-chological testing. Appellant’s trial counsel testified at the evidentiary hearing that he was not aware of any reason to request additional testing. Had such testing been recommended, counsel stated that he would have had the doctor conduct the tests. Dr. Krop had interviewed appellant
 
 *918
 
 and others, reviewed related records, and conducted psychological testing on appellant in preparation for the penalty phase. He testified at the evidentiary hearing that he did not conduct any neuropsychological testing at that time, finding such testing unwarranted. There was no indication of possible brain damage. Krop further testified, however, that in hindsight he should have conducted such tests. In connection with the postconviction proceedings, Krop did conduct neuropsychological testing of appellant. Krop testified at the evidentia-ry hearing that the results indicated appellant had frontal lobe impairment, which affects impulse control and problem solving.
 

 As we previously explained in affirming denial of a nearly identical ineffective assistance claim, “[t]his Court has established that defense counsel is entitled to rely on the evaluations conducted by qualified mental health experts, even if, in retrospect, those evaluations may not have been as complete as others may desire.”
 
 Darling v. State,
 
 966 So.2d 366, 377 (Fla.2007). Here, as in
 
 Darling,
 
 trial counsel relied on his mental health expert, who at the time of trial was well known as a death penalty mitigation expert. Further, trial counsel was also experienced with death cases, and he testified at the evidentiary hearing that his own interactions with appellant were normal and he did not have reason to suggest that any other testing be performed. That in hindsight the mental health expert believes he should have done the testing does not alter our analysis.
 
 See id.
 
 (“Even if the evaluation by Dr. Hercov, which found no indication of brain damage to warrant a neuropsychological workup, was somehow incomplete or deficient in the opinion of others, trial counsel would not be rendered ineffective for relying on Dr. Hercov’s qualified expert evaluation.”). Accordingly, trial counsel cannot be deemed ineffective for failing to request a neuropsychological evaluation.
 

 Even if appellant had met the first prong of
 
 Strickland,
 
 he has not established prejudice. As noted above, Krop testified that his new neuropsychological testing indicated that appellant had frontal lobe impairment, which affects impulse control and judgment. He said that he could not diagnose appellant with brain damage. Further, Krop said that this new finding would have had little effect on his penalty-phase testimony. Based on this neuropsy-chological factor, Krop said that he would have opined that this impairment made appellant’s “serious emotional disturbance” at the time of the crime “more extreme.” Appellant presented another expert at the evidentiary hearing, Dr. Miller, who interviewed appellant and reviewed Krop’s testing results. He agreed that those test results indicated frontal lobe impairment. Accordingly, at best, the evidence shows that appellant had a frontal lobe impairment affecting his impulse control that constituted an additional factor to be considered in relation to his emotional or mental disturbance at the time of the crime. However, even this conclusion was disputed in the postconviction proceedings by Dr. Tannahill Glen, the State’s expert, who independently tested appellant. She testified at the evidentiary hearing that although appellant had a personality disorder not otherwise specified (NOS), the neuropsychological tests did not indicate that appellant had a frontal lobe impairment. Further, the State’s radiologist testified that appellant’s MRI was normal.
 

 Our review of the record indicates that extensive testimony regarding appellant’s psychological profile and the factors affecting his mental and emotional state were presented in the penalty phase. The testimony and conclusions provided by appellant’s expert witness at the postconviction
 
 *919
 
 evidentiary hearing were largely cumulative of that testimony. Coupled with this fact and in light of the facts of this crime, the new determination that appellant has frontal lobe impairment that affects his impulse control is not a significant addition to Dr. Krop’s testimony at the penalty phase cited above. As the trial court stated in the sentencing order, appellant waited approximately eight hours for Charlene Austin to return to her home. When she arrived, he hid and waited again until she fell asleep. Then, when she was most vulnerable, he emerged to first rape her and then strangle her to death “with an electrical extension cord that was doubled and wrapped around her neck twice with the ends pulled through the loop.”
 
 Reese v. State,
 
 694 So.2d at 680. Accordingly, the penalty-phase testimony combined with the trial testimony demonstrate that despite any deficits appellant may have affecting his impulse control, he was capable of planning and carrying out this murder in a controlled manner. Thus, although appellant presented evidence of frontal lobe dysfunction that was not presented at the penalty phase, this evidence is insufficient to undermine our confidence in the outcome.
 

 B. OTHER ISSUES
 

 In his remaining issues, appellant raises a number of constitutional challenges that we have previously rejected.
 

 Appellant claims that Florida Rule of Criminal Procedure 3.575 and Rule Regulating the Florida Bar 4 — 3.5(d)(4), which prohibit attorneys from interviewing jurors, violate his constitutional right to equal protection. This contention fails for two reasons. First, the claim is proeedurally barred because it should have been raised on direct appeal.
 
 See Israel v. State,
 
 985 So.2d 510 (Fla.2008);
 
 Rose v. State,
 
 774 So.2d 629, 637 n. 12 (Fla.2000). Second, we have previously concluded that these rules do not violate a defendant’s constitutional rights.
 
 See Barnhill v. State,
 
 971 So.2d 106, 117 (Fla.2007) (citing cases).
 

 Similarly, we have repeatedly rejected the claim that Florida’s lethal injection procedure violates the constitutional prohibition against cruel and unusual punishment.
 
 See Tompkins v. State,
 
 994 So.2d 1072, 1081 (Fla.2008),
 
 petition for cert. filed,
 
 (U.S. Feb. 11, 2009) (No. OS-8614);
 
 Power v. State,
 
 992 So.2d 218, 221 (Fla.2008);
 
 Sexton v. State,
 
 997 So.2d 1073, 1089 (Fla.2008);
 
 Schwab v. State,
 
 969 So.2d 318, 325 (Fla.),
 
 cert. denied,
 
 — U.S. -, 128 S.Ct. 2486, 171 L.Ed.2d 777 (2008);
 
 Lightbourne v. McCollum,
 
 969 So.2d 326, 329-30 (Fla.2007),
 
 cert. de
 
 nied, — U.S. -, 128 S.Ct. 2485, 171 L.Ed.2d 777 (2008). Further, with regard to appellant’s contention that
 
 Baze v. Rees,
 
 — U.S. —, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), requires a different result, we recently explained in
 
 Ventura v. State,
 
 2 So.3d 194, 200 (Fla.2009), that “Florida’s current lethal-injection protocol passes muster under
 
 any
 
 of the risk-based standards considered by the
 
 Baze
 
 Court.”
 
 See also Henyard v. State,
 
 992 So.2d 120, 130 (Fla.) (“We have previously concluded in Lightbourne and
 
 Schiuab
 
 that the Florida protocols do not violate any of the possible standards, and that holding cannot conflict with the narrow holding in
 
 Baze.”), cert.
 
 denied; — U.S. -, 129 S.Ct. 28, 171 L.Ed.2d 930 (2008).
 

 Appellant also contends that the standard jury instructions given in the penalty phase violate his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments because they diminish the jury’s responsibility in sentencing, shift to him the burden to prove life was an appropriate sentence, and are based on unconstitutionally vague aggravators. Addition
 
 *920
 
 ally, appellant claims that trial counsel provided ineffective assistance by failing to object and thus preserve this issue. As the State points out, we have “repeatedly held the standard jury instructions fully advise the jury of the importance of its role, correctly state the law, and do not denigrate the role of the jury.”
 
 Barnhill,
 
 971 So.2d at 117 (citing cases). In addition, because appellant’s constitutional challenges fail, he has not demonstrated trial counsel error for failing to object to valid instructions, and his ineffective assistance claim fails as well.
 
 See id.
 
 at 117 n. 4.
 

 Appellant argues that cumulative error at trial, including multiple instances of ineffective assistance of counsel, denied him his right to a fair trial. Where, as here, the individual claims of alleged error lack merit, however, the claim of cumulative error necessarily fails.
 
 See Parker v. State,
 
 904 So.2d 370, 380 (Fla.2005);
 
 Johnson v. Singletary,
 
 695 So.2d 263, 267 (Fla.1996).
 

 We next reject appellant’s argument that Florida’s death penalty scheme and thus his sentence violate
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), for two reasons. First, we have previously held that
 
 Ring
 
 does not apply retroactively to convictions and sentences of death that were final before
 
 Ring
 
 issued.
 
 Johnson v. State,
 
 904 So.2d 400, 407 (Fla.2005). Second, a “defendant is not entitled to relief under
 
 Ring
 
 where the aggravating circumstance that the murder was committed during the course of a felony was found and the jury unanimously found the defendant guilty of that contemporaneous felony.”
 
 Zack v. State,
 
 911 So.2d 1190, 1202 (Fla.2005). Here, the trial court’s finding of the contemporaneous felony aggravator is based on the jury’s finding appellant guilty of the contemporaneous crimes of burglary and sexual battery.
 

 Finally, appellant argues that he is ineligible for the death penalty under the holding of
 
 Roper v. Simmons,
 
 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), that it is unconstitutional to execute defendants who were under age eighteen at the time of their crimes, and the holding of
 
 Atkins v. Virginia,
 
 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), that it is unconstitutional to execute a person who is mentally retarded. We disagree. First, appellant was twenty-seven when he murdered Charlene Austin, and
 
 “Roper
 
 only prohibits the execution of those defendants whose
 
 chronological
 
 age is below eighteen.”
 
 Hill v. State,
 
 921 So.2d 579, 584 (Fla.),
 
 cert. denied,
 
 546 U.S. 1219, 126 S.Ct. 1441, 164 L.Ed.2d 141 (2006). Second, testimony at the postconviction hearing indicating that appellant was under a severe emotional disturbance or, as he calls it, a “temporary mental illness,” at the time of the crime is not entitled to the same consideration as mental retardation.
 
 See Lawrence v. State,
 
 969 So.2d 294, 300 n. 9 (Fla.2007);
 
 see also Connor v. State,
 
 979 So.2d 852, 867 (Fla.2007).
 

 IV. CONCLUSION
 

 In light of the foregoing discussion, we affirm the circuit court’s denial of Reese’s motion for postconviction relief.
 

 It is so ordered.
 

 PARIENTE, LEWIS, CANADY, POLSTON, and LABARGA, JJ., concur.
 

 QUINCE, C.J., recused.
 

 PERRY, J., did not participate.
 

 [1]
 

 . Appellant did not appeal the circuit court’s denial of the following claims: (1) the records provisions in section 119.19, Florida Statutes (2002), and Florida Rule of Criminal Procedure 3.852, both facially and as applied, violated his federal and state constitutional right to due process, equal protection, and access to the courts; (2) he was deprived of an adversarial testing because the State failed to disclose evidence and trial counsel failed to obtain a pathology expert; (3) he was deprived of a fair trial due to prosecutorial misconduct; (4) lie was denied an adequate mental health evaluation under
 
 Ake v. Oklahoma, 470
 
 U.S.
 
 68,
 
 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (5) he was denied due process when the trial court engaged in ex parte communications with jurors; (6) the sentencing order does not reflect an independent weighing; and (7) he was denied due process on appeal because of an insufficient trial record.
 

 [2]
 

 . Although evidence regarding appellant’s emotional disturbance at the time of the crime was presented, the trial court found it did not support finding a nonstatutory mitigating circumstance in light of the facts of the crime. On appeal, we rejected Reese’s contention that the trial court erred in rejecting as mitigating his "traumatic childhood, possessive relationship with Jackie Grier, mental impairment at the time of the crime, and amenability to prison life,”
 
 Reese,
 
 768 So.2d at 1058-59, finding the record "support[ed] the trial court’s conclusion that the mitigators either had not been established or were entitled to minimal, little, veiy little, or vety slight weight.”
 
 Id.
 
 at 1059.